## VIOLA WATFORD, PLAINTIFF, v. UNSATISFIED CLAIM AND JUDGMENT FUND BOARD, A STATUTORY BOARD OF THE STATE OF NEW JERSEY, DEFENDANT.

Superior Court of New Jersey.
Law Division

Decided February 23, 1971.

*Messrs. Perskie and Perskie,* attorney for plaintiff (*Mr. David H. Romberger* on the brief).

Mr. *Remo M. Croce,* Deputy Attorney General, for defendant (*Mr. George F. Kugler,* Attorney General, attorney).

GALLNER, P. J. J. D. R. C. (temporarily assigned). [1] This matter is brought before this court on a motion for summary judgment addressed to a complaint seeking a de-

claratory judgment resulting from the Unsatisfied Claim and Judgment Fund Board (Fund) refusing to defend an action heretofore instituted by plaintiff against an uninsured motorist. The Fund denies responsibility because of plaintiff's failure to comply with the statutes requiring the filing of a notice of intention. The salient question before this Court is whether the transactions which heretofore took place at the time of the inception of the original action by plaintiff against an uninsured motorist constituted sufficient notice under *N. J. S. A.* 39:6–65. The Fund claims that the procedure followed was such that it should not be called upon to defend the action; plaintiff, on the other hand, claims that there has been a sufficient substantial compliance with the statute so as to impose an obligation upon the Fund to defend and, in the event of a judgment, after trial, to pay within statutory limits any Judgment the Plaintiff may obtain.

The original action and the transactions taking place thereunder are as follows: On February 8, 1969 plaintiff was involved in an automobile accident with an uninsured motorist, one James Martin. The accident happened in Cumberland County and, as a result thereof, plaintiff herein was injured. A complaint was filed against the uninsured motorist on February 24, 1969 by the firm of Perskie and Perskie, attorneys, having their offices in Wildwood, New Jersey, which complaint was served upon the driver and other persons joined as defendants, to wit: the owner, Annie B. Martin and other uninsured motorists involved in the accident. Defendants then, and prior to March 13, 1969, visited their personal attorney, Philip P. Wodlinger, who has law offices in the City of Millville. Wodlinger sent the complaint to the Unsatisfied Claim and Judgment Fund Board on March 13, 1969. In an accompanying letter he advised them that James Martin and Annie B. Martin were defendants to the complaint; that the Martins were uninsured and, further that he had told his clients it would be more expedient for the Fund to attend to the defense of the action. He en-

closed a copy of the summons and complaint and stated: "I * * * assume that you will defend this action unless I hear from you to the contrary. I am mailing a copy of this letter to Perskie & Perskie, Esquires." This communication was sent to the Fund with the complaint enclosed, and a copy of the letter was sent to plaintiff's counsel.

Nothing was done by plaintiff's counsel, and on May 29, slightly more than 90 days from the date of the accident, the Fund communicated with plaintiff's counsel and advised him as follows: "We acknowledge receipt of the Complaint in this matter. A review of our files has failed to reveal any record of a notice of intention filed by or on behalf of the plaintiff; therefore, we are unable to assist you in this matter." The Fund had the complaint in its office from March 1969 until the end of May 1969, during which time nothing was said by them to anyone or any communications addressed to anyone with respect to the anticipated decision that the Fund was going to make respecting the action. A count of the days will indicate that approximately 117 days had expired, but during the entire 90-day prescribed period, the complaint was in the hands of the Fund.

At the conclusion of the time to plead plaintiff made a motion before the Superior Court, Law Division, Cape May County, for an order granting a default against defendant Fund for failure to plead or otherwise defend. Subsequently, and by order of the court, the Fund was given leave to file an answer in this action. It answered, alleging that it received the letter from Wodlinger, referred to hereinabove, and admitted it had received a notice of intention, dated June 5, 1969 after the expiration of the 90 days. As a separate defense the Fund set up as a bar noncompliance with *N. J. S. A.* 39:6–65. Subsequent to filing the answer, a motion was made to dismiss the action summarily, and it is this motion the Court is now called upon to decide.

The statute, *N. J. S. A.* 39:6–65, sets up certain guidelines — a course of action, if you will — promulgated for the purpose of granting heretofore unknown relief to statu-

torily qualified persons injured or suffering property damage by virtue of accidents with uninsured motorists. The statute prescribes a certain procedure that must be followed, and the Fund alleges in its brief, as well as in argument before the court, that plaintiff's action is barred because there was a failure to follow these prescribed guidelines.

It is the opinion of this court that to deny relief because of a deviation from the prescribed route is to defeat the very purpose for which the statute was enacted. A reading of section 65 would indicate that its primary purpose is to place the Fund upon notice of the pending action. Obviously, it is imperative that the Fund, as well as any insurance company, should have prompt notice of the happening of a casualty insured against or protected by the Fund. A requirement that such notice be given is reasonable and will be enforced. *Miller v. Zurich General Acc. & Liab. Ins. Co.,* 36 *N. J. Super.* 288 (App. Div. 1955). It would seem that the Fund needs prompt notice, as does any insuror, yet an examination of the statute will indicate that its provisions for notice to the Fund are much more liberal than those contained in insurance policies. See *Russo v. Forrest,* 52 *N. J. Super.* 233 (App. Div. 1958).

In this case notice was not sent to the Fund within the prescribed time; however, plaintiff did ask for forms and advised the Fund of the accident. The case arose out of a delay because of the injury, and, on the facts, the court denied relief; however, the court, in its opinion indicated that if notice had been given by some person, particularly plaintiff's husband who was with her at the time of the accident, within a reasonable time, then even if the information had been in the form of a letter telling the Fund about the accident and requesting forms, it would have been sufficient to have fulfilled the statutory mandate. The court was explicit in pointing out that "It would be impossible in a single opinion to lay down general rules for the guidance of all future cases." However, pertinent in the opinion was the following:

And though the statute does say the notice shall be "on a form prescribed" by the Fund, that does not mean the claimant or someone on his behalf may not write the Fund, advise it of the accident and ask for forms * * * [t]he date of the receipt of such a letter and its contents would very likely have a bearing favorable to the claimant on the ultimate question whether notice by, or on behalf of the claimant, was given within a proper time.

It is well recognized in our law that the purpose of notice is merely to apprise the responsible party of the pendency of an action and to give him an opportunity to make investigation and protect himself in the suit, should there be one. The purpose of notice is to avoid fraud and to prevent the claimant from taking an unfair advantage over the person, insurance company or Fund called upon to defend an action by allowing such a length of time to expire that it would be impossible for proper investigation and preparation. See *Miller v. Zurich General Acc. & Liab. Ins. Co., supra.*

The basic philosophy behind the entire Fund concept was laid down by Justice Heher in *Giacobbe v. Gassert,* 29 *N. J.* 421 (1959). In that case the question arose as to whether an injured person was able to give the statutory notice required under *N. J. S. A.* 39:6-65 or, in lieu thereof, show some reason for not giving such notice. Plaintiff had been injured, and having no knowledge of the right to seek redress by making a claim against the Fund and later learning thereof, gave notice to the Fund by letter, which letter was written by plaintiff's landlady. Defendant, Director of the Fund, read the statute literally and insisted that notice had not been given within a reasonable period. The court held that the Fund had not been prejudiced, and that its Administrator was not placed at a disadvantage, nor was there any claim, as in this case, to the contrary. Justice Heher pointed out that notice is a process to prevent overreaching and otherwise to secure efficient administration of the Fund, and that the statutory provisions should be liberally read and applied to serve and not subvert the substance or policy of relief in the given circumstances. He stated that the statute was protective, not punitive, and he recognized the relaxation

that may be required under certain mitigating circumstances. In any event, he did not place a strict construction upon the statute, as the Attorney General would in the present case. The court said in *Giacobbe*:

It is the obvious reason of a law that gives it life, not the strict literal sense of terms. The words may be expanded or limited according to the spirit of the legislative expression. The animating principal of the correlated symbols of expression prevails over the import of particular words and phrases considered *in vacuo* or in the context of other and different circumstances. The whole is to be coordinated in fulfillment of the overriding plan and purpose; the procedural course is not an end in itself but a mechanism in aid of the substantive policy. [Citing cases]. And here the statutory relief is to be accorded to all who are within the given class, as a preemptory measure of social policy; and the notice is designed to afford a timely inquiry and thus to safeguard the Fund against fraud and imposition. *Giles v. Gassert*, 23 *N. J.* 22 (1956). [at 425]

The Attorney General argues that the purpose of the statutory requirement that notice be given is to prevent the perpetration of a fraud upon the Fund. With this, the court has no argument. However, there is no showing in this case that any fraud has been perpetrated upon the Fund and therefore, having leaped this hurdle, we must now come to the other side of the coin with respect to the Security Responsibility Law.

This is social legislation, not to be denied because of the failure to follow a prescribed form of notice. The wording of the statute should be construed in the light of its intent and purpose. *Frantz Equipment Co. v. Anderson*, 37 *N. J.* 420 (1962). The principal social impact brought about by the creation of the Fund, and an outline of its avowed purpose, was expressed by the court in the case of *Douglas v. Harris*, 35 *N. J.* 270 (1961), where the Court said:

* * * *The purpose of the Fund is to provide a measure of relief to persons who sustain losses or injury inflicted by financial irresponsible or unidentified operators of motor vehicles where such person would otherwise be remediless. Corrigan v. Gassert, 27 N. J. 277, Dixon v. Gassert, 26 N. J. 1 (1958). The statute is to be liberally construed to advance the remedy, due regard being had to the protection of the*

Fund against fraud and abuse and to the fulfillment of the essential *Legislative policy*. *Giles v. Gassert*, 23 *N. J.* 22, 34 (1956) * * * The public interest demands that the Fund, although a trust fund for those individuals injured by financially irresponsible or unidentified operators of motor vehicles, be administered in a fashion to assure that only those persons legitimately entitled to participate in its benefits are paid therefrom. This is a duty imposed by public policy and owed to the contributors as well as the general public * * *. [at 279; emphasis supplied]

There is no showing in this case that there has been any fraud or imposition perpetrated upon the Fund. We are dealing with the interpretation of section 65 and attempting to arrive at the ultimate conclusion as to whether or not there has been a sufficient substantial compliance with the statutory mandate so as to fulfil the general purpose of the statute, to wit: notice to the Fund in order to place upon the Fund the responsibility of defending the action.

While the statute prescribes a certain means to reach a just end, it is inconceivable that the road to justice is a hard straight line, deviation from which would compel a court to place greater emphasis on the means rather than on the end. Such must have been the rationale of the court in *Wharton v. Knox*, 98 *N. J. Super*. 61 (App. Div. 1967), which held that a "liberal construction" of *N. J. S. A.* 39:6–65(b) could lead to only one legal result, that "the insolvency of the insurance company was tantamount to a 'disclaimer,' as that term is used in our statute." In that case the insurance company had become insolvent and had not disclaimed. The court was making reference to subsection (b) of the statute, which requires 15 days' notice to the Fund after having received a disclaimer on a policy of insurance. A constricted reading of the statute, and placing thereon the bonds of strictness the Attorney General places on the statute in the case at bar, would have totally frustrated the end result reached in *Wharton*. By the same token, were we to place the strict interpretation on the statute as was placed by the court in *Keith v. Petrakakas*, 95 *N. J. Super*. 262 (Law Div. 1967), the decision in *Wharton* could have never been written.

In the case at bar the Fund contends that the letter from the uninsured's lawyer enclosing the complaint filed by plaintiff (a qualified person) was not notice within the framework of the statute. Thus, we are faced with the question of construction and look for its parallel in *Wharton,* where the Fund contended that the insolvency of an insurance company could not be construed as a disclaimer under the act. Following the line of logic of the court in *Wharton,* this court applies the same legal philosophy and adopts the language in *Wharton* to support a finding that the "form" of the notice (short of fraud) shall not frustrate legislative intent. The court in *Wharton* outlined the basic principles of the Act and said, "Taken as a whole, the act is to be liberally construed to advance the remedy it affords. Although due regard must be given to the protection of the Fund agianst fraud and abuse, the statute should not be narrowly construed to prevent the fulfilment of the Legislative policy it projects."

The Attorney General relies upon the case of *Szczesny v. Vasquez,* 71 *N. J. Super.* 347 (App. Div. 1962) ; however, in that case, more than 90 days had expired before even a notice of intention was filed, and the pivotal question was whether the Fund had received the notice, plaintiff claiming that it was sent through the secretary of the attorney. However, the court found *from the facts* that it had not been sent or, in any event, had never been received, and therefore concluded that the notice had never been sent. The attorney's secretary had testified that it was her belief that she had sent the notice ; however, the court read into the uncertainty of the testimony a corroboration of the Fund's claim that it had never received the notice. It is obvious in that case that, in balancing the liberal construction of the statute against "due regard being had to the protection of the Fund against fraud and abuse," and within the framework of the facts, the protection of the Fund superseded the protection of the injured motorist, *Szczesny* turns upon its own facts. In the case at bar an examination of the communications by the attorney

for the uninsured motorist and the language of the complaint that was sent to the Fund, indicate quite clearly that substantially all of the information which could be incorporated in the prescribed form by the Fund was incorporated in the complaint which the Fund received well within the 90 days.

The complaint to which reference is made and which gave rise to the original suit, contained the name and address of the claimant, Viola Watford; the names of the uninsured motorists; the manner and place where the accident happened; the fact that there were injuries and medical expenses which ensued from the accident, and the court in which the venue was laid. There is little more than this in the prescribed form, and to permit the Fund now to say that it did not have sufficient information upon which to predicate or at least inaugurate the necessary conduct of the case, would be to fly in the face of reality.

The Fund does not investigate the case. Under *N. J. S. A.* 39:6–66 it is provided that the Fund Board shall assign to insurors the claims made against it for investigation and defense, in order that a proper defense may be interposed. There was sufficient information in this complaint, together with the letter from the uninsured motorist's attorney, to place the Fund on notice and cause it to follow the procedure prescribed in *N. J. S. A.* 39:6–66. A notice of intention is merely an advance information or advice that someone intends at sometime or other, within the period of the statute of limitation, to bring an action. Here we have more than a notice of intention; we have the actual action brought, the complaint filed, and the Fund amply on notice that an uninsured motorist who had paid an additional fee for his registration was being sued and that there would be a possibility that the Fund would be called upon in the event of a judgment to pay the judgment, or at least before that exigency to defend the action. We cannot ignore the rights of the uninsured motorist. See *Douglas v. Harris, supra.*

■ This court looks with disfavor at the sequence of events wherein the Fund, when advised by the uninsured motorist's attorney that he was sending the Fund the complaint and that he assumed it would defend the action unless "I hear from you to the contrary," remained silent; lulled plaintiff, who had received a copy of the letter, as well as the uninsured motorist, into a sense of security, and then, at the conclusion of 90 days, advised the parties that it would not defend. There was almost a full 90-day period during which the Fund could have disclaimed liability in the same language that it did in the letter of May 29, 1969, wherein, after 90 days had expired, the Fund said, "We acknowledge receipt of the complaint in this matter. A review of our files has failed to reveal any record of a notice of intention filed by or on behalf of the plaintiff; therefore, we are unable to assist you in this matter." The Fund's silence and the failure to raise the technical barriers prior to the expiration of 90 days should now estop it from denying the protection to the uninsured motorist and injured plaintiff for which it was basically established.

It is the opinion of this court that the Fund's actions were arbitrary and unreasonable and fell well within the language of Judge Halpern's dissent in *Jamar v. Hodges,* 107 *N. J. Super.* 495 (App. Div. 1969). Judge Halpern espoused this most logical and proper principle of law:

The Fund is a public body, whose officers hold position of public trust. They are required to exercise their statutory duties in good faith and on fair and intelligent consideration, with loyalty to the public, the courts and litigants. If the Fund's actions are deemed arbitrary, they are subject to judicial scrutiny for reasonableness * * *.

With respect to the working of an estoppel against the State, it must be borne in mind that the recent pronouncements of our Supreme Court in the cases of *Willis v. Dept. of Conservation,* 55 *N. J.* 534 (1969), and *P. T. & L. Construction Co. v. Commissioner, Dept. of Transportation,* 55 *N. J.* 341 (1969), destroying sovereign immunity, shows the

506

judicial journey into enlightenment and justice in these matters. However, the concept of sovereignty as being a defense, not only against law suits but even in the invocation of the doctrine of estoppel, is not a new one. In the case of *Summer Cottagers' Ass'n of Cape May v. City of Cape May*, 19 *N. J.* 493 (1955), Justice Heher aptly laid down the principles of estoppel insofar as they relate to government. He said:

The principle of estoppel *in pais* is not, for obvious reasons, given the same freedom of application against the public as against private persons. Municipalities, for example, are agencies of government for local administration with enumerated powers, and deviations from the legislative grant must needs have the legal consequences comporting with the declared legislative intention and policy. The essential principles of the policy of estoppel here invoked is that one may, by voluntary conduct, be precluded from taking a course of action that would work injustice and wrong to one who with good reason and in good faith has relied upon such conduct * * * An estoppel by matter *in pais* may arise by silence or omission where one is under a duty to speak or act * * * It has to do with the inducement of conduct to action or nonaction. Ones act or acceptance may close his mouth to allege or prove the truth. * * * The doing or forebearing to do an act induced by the conduct of another may work an estoppel to avoid wrong or injury ensuing from reasonable reliance upon such conduct. The repudiation of ones act done or position assumed is not permissible where that course would work injustice to another, who, having the right to do so, has relied thereon * * *. [at 504–505; citations omitted]

This court has no hesitancy in preventing the Fund from hiding behind its supposed sovereign immunity (now destroyed, see cases, *supra*) and evade the thrust of an estoppel, particularly when the communication to it, with the accompanying complaint, indicated that all parties would rely upon the Fund accepting the charge imposed upon it or making a timely rejection thereof. The failure to reject the complaint and the form of the letter as constituting proper notice, should have been timely. The entire legislative scheme would be mere sophistry if the Fund were now permitted to evade and avoid a defense of this action. It is the holding of this court that not only because of the substance rather

than the form of the notice within time to the Fund of the pendency of the action, but because of the Fund's failure to react thereto and thus bring down upon its head the doctrine of estoppel, the Fund should be called upon to defend. This brings us now to a further important feature of this case.

This declaratory action is not brought for the purpose of inducing the Fund to pay a judgment under the proper statutes. This is merely an action calling upon the Fund to defend. Whether the Fund will be required at a future date to pay a judgment is not now before this court, and it may well be that the defense of the action may meet with such results that the question of payment under *N. J. S. A.* 39:6–74 and 39:6–70 may never arise. However, should it arise, then the responsibility to determine whether payment should be made is upon the judiciary. As was said in the dissent in *Jamar v. Hodges, supra*:

A consideration of the Fund Law as a whole reveals a statutory scheme *placing the ultimate decision for payment from the Fund, in most instances, upon the judiciary*. The courts are the guardians of the trust money held in the Fund. *Szczesny v. Vasquez*, 71 *N. J. Super.* 347, 358 (1962). It must hear all applications for the payment of judgments against uninsured drivers; *N. J. S. A.* 39:6–69. It must be satisfied that the claimant (judgment creditor) has complied with all the conditions entitling him to payment; and the Fund is empowered to appear and be heard as to "why the order should not be made;" *N. J. S. A.* 39:6–70 * * *. These statutes spell out a legislative intent requiring the Fund to show some reasonable basis as to why the court should not enter the order to pay the judgment. [107 *N. J. Super.* at 500–501]

At this posture, then, it would appear that inasmuch as the court will eventually be called upon to determine whether judgment, if recovered, should be paid by the Fund, it should now exercise that same power conferred upon it by the language of *Jamar* in determining whether the Fund should defend. Inasmuch as the court, by the language of *Jamar*, is considered the true guardian of the trust money held in the Fund, this same court should have the power to deter-

mine whether the Fund should inject itself into the suit and defend on the basis that there has been a substantial compliance with the statute, and whether there has been an imposition or fraud perpetrated upon the Fund.

The supervisory powers of the court over the Fund was recently decided in the case of *Crudup v. Marrero*, 57 *N. J.* 353 (Jan. 25, 1971), dealing with experimental *Rule* 4:58 *et seq.*, the offer of judgment rule. The Fund claimed it was immune from the operation of this rule and refused to pay counsel fees and interest as required by the rule upon the generation of a verdict of more than 120% over the offer of judgment. Justice Francis held that despite the lack of statutory authority in the legislation creating and regulating the Fund, the inherent powers of the court are broad enough to enforce this rule against the Fund despite its protests. In response to the dissenting opinion in that case, Justice Francis supplied the concept upon which this court leans heavily in arriving at its conclusions. Justice Francis said:

The dissent suggests that Rule 4:58 should not be applied to the Fund because of the latter's public nature. This means that personal injury accident victims with claims against the Fund can be prevented from receiving their Just compensation at the discretion of the Fund for what ever period of years it takes for such cases to be reached for trial and disposed of in that fashion. Approval of that course would be opposed to all equities of the situation.

It is but a short step from destroying the sovereign immunity of the State to the detriment of its citizens to judicial incursion into the Fund's cacoon of claimed immunity.

While this court does not suggest new forms or modes of notice as a practice in substitution of statutory fiat, it cannot stand idly by where the facts warrant a justifiable relaxation of procedure in order to prevent resulting inequities to the very persons for whose benefit the Fund was created.

I therefore find that the Fund has received ample, if not "form" notice, of the pendency of a suit against an uninsured motorist by an injured claimant for whose benefit the

Fund was originally established. I find that the Fund failed to reject the claim in the form in which it was received; failed to give notice to either the uninsured motorist, his attorney or the attorney for the claimant, and that it would not consider the filing of the complaint as ample. I find that timely notice was given to the Fund, affording it the opportunity to assign the defense to the action. I find, further, that a denial of the right to a defense to this plaintiff would totally negate the legislative scheme which gave rise to the creation of the Fund in the first instance, and for that reason the motion for summary judgment by the Fund is denied, and the Fund directed to proceed with the defense of the original action.