722 A.2d 128

ALICIA MENA AND AYDEE GUEVERA BY HER G/A/L ALICIA MENA, PLAINTIFFS–RESPONDENTS, v. UNSATISFIED CLAIM AND JUDGMENT FUND, DEFENDANT–RESPONDENT, AND NESTAR MENA, MARCO VILLACIS, THE MARKET TRANSITION FACILITY OF NEW JERSEY BY POLICY MANAGEMENT CORPORATION, JOHN DOES 1–10, ABC CORPORATION & XYZ CORPORATION, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Submitted November 4, 1998—Decided December 30, 1998.

Before Judges PRESSLER, BROCHIN, and KLEINER.

*Hahn & Howarth,* attorneys for appellant (*Scott M. Noonan,* on the brief).

*Goodman & Lustgarten,* attorneys for respondent (*Alex Casale,* on the brief).

The opinion of the court was delivered by

KLEINER, J.A.D.

Defendant Unsatisfied Claim and Judgment Fund Board ("UCJF") appeals from a judgment [1] following a bench trial that

---

[1] On the date scheduled for this non-jury trial, counsel for each party offered a preliminary statement of the facts. Without any formal application, but clearly

permitted plaintiffs Alicia Mena ("Alicia"), individually and as guardian *ad litem* of her daughter, Aydee Guevera ("Aydee"), to recover personal injury protection ("PIP") benefits for injuries sustained in an automobile collision on April 26, 1992. The judge concluded that plaintiffs were entitled to a judgment despite the facts that: (1) plaintiffs were passengers in an uninsured motor vehicle operated by defendant Nestar Mena ("Nestar"), the husband of Alicia and father of Aydee; [2] (2) Alicia's Notice of Intention to Make a Claim against the UCJF, though timely filed, failed to assert a potential claim for PIP benefits; (3) Aydee's Notice of Intention to Make a Claim against the UCJF was untimely filed; and (4) plaintiffs' claims for PIP benefits were asserted in an amended complaint filed after the two-year statute of limitations. Although we do not agree entirely with the trial judge's reasoning as articulated in a written opinion, we agree with the ultimate conclusion. Since appeals are taken from judgments and not from opinions, *see R.* 2:2–3a(1), we affirm.

I

On April 26, 1992, Alicia and her daughter Aydee, then age fourteen, were passengers in a motor vehicle operated by Nestar when it collided with a motor vehicle owned by defendant Marco Villacis. The operator of the Villacis vehicle fled the scene.[3] Alicia, Aydee, and Nestar were injured in this collision.

---

with the assent of all counsel, the trial judge permitted each counsel to argue the merits of each party's legal position. In essence, the judge converted the trial into a summary judgment proceeding. Following the entry of judgment for plaintiffs, defendant UCJF filed a motion seeking reconsideration. Defendant's motion was denied.

[2] We note that defendant Nestar is identified in the record as the father of the infant plaintiff Aydee Guevera. The record does not explain the discrepancy in the child's surname. Additionally the record offers alternative spellings of the minor plaintiff's surname: "Guevara" and "Guevera."

[3] Ultimately, it was determined that the operator of defendant Marco Villacis' vehicle was his son. In the ensuing litigation, discussed *infra*, plaintiffs sued

Prior to April 26, 1991, Nestar had purchased automobile liability insurance through an insurance broker, defendant Cardona Travel and Insurance Agency ("Cardona"). Nestar's application for insurance was forwarded to defendant Market Transition Facility ("MTF") and was assigned for servicing to defendant PMC Insurance Services ("PMC"). PMC utilized the services of defendant Hertz Claim Management ("HCM") to process claims asserted against PMC. Prior to April 26, 1992, Nestar paid the renewal premiums on this PMC policy to Cardona and received from Cardona an insurance identification card for the renewal period.

After the accident, Alicia mailed a Notice of Intention to Make a Claim (the "notice") against the UCJF on April 30, 1992.[4] The notice attached a copy of the police report prepared at the time of the collision which identified Alicia and Aydee as injured passengers in Nestar's motor vehicle. Alicia's notice did not indicate that she was injured or that her claim encompassed a claim for PIP benefits. On May 7, 1992, UCJF received a second Notice of Intention to Make a Claim from Alicia and another copy of the police report.[5]

We infer from the record that Alicia, when notifying UCJF of her intentions, also notified PMC of her prospective claim. That is the import of a letter sent by HMC to Alicia's counsel on July 1, 1992, stating:

---

several fictitious defendants, one of whom was described as the operator of the Villacis vehicle. Once the true identification of the driver was determined, the pleadings as originally filed were amended.

[4] Although the record on appeal does not explain why Alicia filed a Notice of Intent to Make a Claim four days after this accident, we presume she filed this form to protect her claim in the event that any of the vehicles involved in the collision were uninsured. The record is clear that prior to April 30, 1992, Alicia did not know that her husband's insurer would disclaim coverage.

[5] On both forms Alicia did not provide an answer to the following question: "Do you claim personal injury protection benefits?"

This acknowledges your correspondence of April 30, 1992. Please be advised that we cannot verify coverage for the individual [Nestar] alleged to have a policy with us. Therefore, we will not be able to consider your claim.[6]

On December 10, 1992, the UCJF received a Notice of Intention to Make a Claim on behalf of Aydee. This notification indicated that Aydee was injured and described the injuries as "head, body, neck, limbs, & nervous system."[7] On December 23, 1992, UCJF responded, notifying Aydee's counsel[8] that Aydee's claim was placed on an "ineligible status" because: there was no proof of Nestar's insurance and the notice was untimely filed beyond the ninety-day limitation period prescribed by *N.J.S.A.* 39:6–65.

On March 1, 1994, Alicia, individually, and as guardian *ad litem* of Aydee, filed this complaint in the Law Division naming Nestar, Villacis, John Doe (a fictitious name),[9] and the UCJF as defendants. Although the complaint indicated that each plaintiff was injured, the *ad damnum* clause sought only compensatory dam-

---

[6] We may also infer that Alicia forwarded the second Notice to PMC as HMC forwarded to Alicia's counsel in December 1992 another, but exact, duplicate response as it had mailed on July 1, 1992.

[7] On the Notice of Intention to Make a Claim Form submitted on behalf of Aydee, dated December 8, 1992, the form inquired: "7. Are your medical bills payable under any medical payment plan? Blue Cross, HMO, private, etc. *N.J.S.A.* 39:6–86.2." Aydee answered, "No."

Aydee's form also inquired: "3. Were you the spouse, parent or child of the uninsured motorist against whom the claim was made? *N.J.S.A.* 39:6–70." Aydee answered, "No." These questions did not appear on either Notice submitted by Alicia. The record on appeal does not explain the differences in the questions asked on the Notice submitted by Alicia and on the Notice submitted on behalf of Aydee.

On December 10, 1992, Aydee was then age fifteen. The signature of the "claimant" cannot be deciphered. We presume Aydee did not file this form herself and presume it was either signed by her mother, Alicia, or by her counsel.

[8] The same attorney represented both Alicia and Aydee.

[9] As noted, *supra,* the "John Doe" was described as the driver of the vehicle owned by defendant Marco Villacis.

ages, interest, costs of suit, and attorney's fees. The complaint did not include a claim by either plaintiff for PIP benefits.

On March 10, 1995, plaintiffs filed an amended complaint naming as additional defendants the MTF by PMC and adding two additional counts: a claim for PIP benefits payable by MTF and a claim for PIP benefits payable by the UCJF.[10]

While discovery progressed on Alicia's amended complaint, Nestar filed a complaint in a separate action against numerous defendants including PMC, MTF, and Cardona. Nestar sought compensation for the injuries he sustained in the automobile collision. By a separate motion, Nestar demanded that: MTF provide a defense and indemnity as to Alicia's amended complaint; that MTF be compelled to pay his claim for PIP; and that a default judgment be entered against Cardona, who failed to answer Nestar's complaint. MTF filed a cross-motion seeking to absolve it of any responsibility to Nestar or any claimant against him contending that Nestar's liability insurance policy had not been renewed prior to the accident. The motion judge granted MTF's cross-motion, but entered a liability judgment on behalf of Nestar against Cardona predicated upon a finding that although Nestar had paid his insurance premiums to Cardona, Cardona had failed to remit those premiums to MTF.[11]

Following the entry of an order memorializing the motion judge's decision, counsel for Alicia and Aydee demanded that the UCJF process plaintiffs' PIP claims stating, "It is now apparent that my clients were passengers in an uninsured vehicle, and are not otherwise covered for PIP benefits, except through the UCJF." In response, the UCJF wrote in a letter dated July 26, 1996:

---

[10] Although the amended complaint added additional "John Doe" defendants and fictitious defendants ABC Corporation and XYZ Corporation, those references are irrelevant to the disposition of this appeal.

[11] The record on appeal does not fully reflect all aspects of Nestar's claim.

As explained after Judge Giles' decision of July 12, 1996, the UCJF will not process payments of PIP bills in the above until all avenues of recovery are exhausted; namely the Cordona [sic] Agency.

[Nestar's counsel] has made it clear that they intend to pursue the Cordona [sic] Agency for misrepresentations made to their client. In the event that [Nestar's counsel] is not successful, the UCJF would then pay PIP bills for your clients. If however, Cordona [sic] Agency is found liable, the UCJF would pay nothing.

Nestar's complaint was then consolidated with Alicia's amended complaint. A non-jury trial on the consolidated complaints commenced October 24, 1996, resulting in a liability judgment on behalf of Nestar against Cardona and its principals for $32,932. Nestar withdrew his complaint as to the UCJF. On Alicia's and Aydee's claims for PIP benefits, the judge ordered the UCJF to pay both of the PIP claims. The judge thereafter denied the UCJF's motion for a new trial.[12]

## II

At trial, and again on appeal, UCJF, citing *N.J.S.A.* 39:6–70, contends that plaintiffs were not entitled to recover PIP benefits from it as both plaintiffs were passengers in a motor vehicle operated by an uninsured driver. UCJF relied upon *N.J.S.A.* 39:6–70 entitled "Hearing on application for payment of judgment," which provides, in pertinent part:

The court shall proceed upon such application, in a summary manner, and, upon the hearing thereof, the applicant shall be required to show:

(b) He is not a spouse, parent or child of the judgment debtor, or the personal representative of such spouse, parent or child.

Defendant's argument ignores the fact that plaintiffs' claims for PIP benefits were presented only in the context of a trial on plaintiffs' amended complaint for PIP benefits payable from the

---

[12] Defendant's post-judgment motion was denominated a motion for a new trial or reconsideration. *See supra,* note 1. The record does not specifically reflect the disposition of plaintiffs' claims for compensatory damages. However, since the trial focused solely on plaintiffs' claims for PIP benefits and on the consolidated damage claim asserted by Nestar as to Cardona, we may infer that plaintiffs' compensatory damage claims were resolved as to defendant Villacis and were withdrawn as to defendant Nestar.

fund. *N.J.S.A.* 39:6–70 pertains to the eligibility of a claimant seeking to satisfy a *judgment* from the UCJF where the claimant has asserted a claim and thereafter recovered a judgment against an uninsured defendant.

Although Nestar, the husband of Alicia and the father of Aydee, was named as a party defendant, as of the date of this trial Nestar was not then a judgment debtor, and plaintiffs were not attempting to satisfy a judgment obtained against Nestar. *N.J.S.A.* 36:6–70. Plaintiffs were merely attempting to assert a claim for PIP benefits payable from UCJF. As such, plaintiffs' claim is governed by *N.J.S.A.* 39:6–86.1.

The original version of *N.J.S.A.* 39:6–86.1, *L.* 1972, *c.* 198, § 7 (effective Jan. 1, 1973), included a subsection entitled "Exceptions." A claimant was required to prove that she was not operating or riding in a stolen vehicle or without the permission of the owner, was not an insurer, *was "not a spouse, parent or child of the uninsured motorist . . . ,"* and was *"not, at the time of the accident, operating or riding in an uninsured motor vehicle owned by him or his spouse, parent or child, and was not operating a motor vehicle in violation of an order of suspension or revocation." Ibid.* (emphasis added).

However, as the Supreme Court has noted,

[I]n the 1983 amendments to *N.J.S.A.* 39:6–86.1, the Legislature has slightly reworded these disqualifications to incorporate again only certain of the general qualifications of the Fund Law. The provision now stipulates that a claimant for PIP benefits is disqualified only by reason of the provisions of sub-sections (a), (c), (d), or (*l*) of *N.J.S.A.* 39:6–70. Those disqualifications correspond to the specific disqualifications of the 1972 version of the Fund's PIP counterpart, *i.e.,* that it is not a compensation case; there is no revocation involved; and there is no ownership by the claimants of an uninsured vehicle.

[*Wilson v. Unsatisfied Claim and Judgment Fund Board,* 109 *N.J.* 271, 277 n. 2, 536 *A.*2d 752 (1988).]

The Court also noted that when the amendments were adopted in 1983, which referred PIP exclusions back to specifically enumerated subsections of *N.J.S.A.* 39:6–70, one of those subsections, (d), was likewise amended. The amended subsection eliminated the disqualification of the owner or registrant of the vehicle, whereas

the pre-amendment subsection excluded the owner's or registrant's family. *Wilson*, 109 *N.J.* at 272, 536 *A.*2d 752. The term "judgment debtor" was never used in connection with the exclusions for PIP benefits although that provision had always existed as *N.J.S.A.* 39:6–70(b). Had the Legislature intended to include that subsection as an exclusion, it could easily have done so. We therefore conclude, as did the trial judge, that plaintiffs were not excluded from recovering PIP benefits from the UCJF simply because they were both passengers in a motor vehicle operated by an uninsured driver who was also a spouse or parent. Defendant's legal argument is the same argument unsuccessfully raised by the defendant in *Wilson*, 109 *N.J.* at 276–77, 536 *A.*2d 752. The trial judge, relying upon *Wilson*, rejected defendant's contention. We see no reason to intervene in the trial judge's decision.

### III

In addition to the insurance issue relating to *N.J.S.A.* 39:6–86.1, defendant contends that plaintiffs' PIP claims are barred by the two-year statute of limitations, as each plaintiff first asserted her claim for PIP benefits in the second amended complaint filed May 10, 1995. Plaintiffs' original complaint, timely filed on March 1, 1994, did not assert a PIP claim by either plaintiff. *N.J.S.A.* 39:6A–13.1a provides:

> Every action for the payment of benefits set forth in section 4 and 10 of this act [the PIP benefits provisions], except an action by a decedent's estate, shall be commenced *not later than 2 years after the injured person or survivor suffers a loss or incurs an expense and either knows or in the exercise of reasonable diligence should know that the loss or expense was caused by the accident,* or not later than 4 years after the accident whichever is earlier, provided, however, that if benefits have been paid before then an action for further benefits may be commenced not later than 2 years after the last payment of benefits.
>
> [Emphasis added.]

In considering Alicia's claim for PIP benefits, the judge identified two reasons to permit that claim: (1) the purposes underlying the enforcement of the statute of limitations were not present as to Alicia's claim; and (2) pursuant to *R.* 4:9–3, the doctrine of relation back would permit the amended complaint seeking com-

pensatory damages *and* PIP benefits to relate back to the date of plaintiffs' original complaint that only sought compensatory damages.

The judge explained that the purpose of the statute of limitations is two-fold: (1) "to stimulate litigants to pursue a right of action within a reasonable time so that the opposing party may have a fair opportunity to defend, thus preventing the litigation of stale claims"; and (2) [to] "penalize dilatoriness and serve as a measure of repose." (Citing *Rivera v. Prudential Property and Casualty Ins. Co.,* 104 *N.J.* 32, 39, 514 *A.*2d 1296 (1986); *Ochs v. Federal Ins. Co.,* 90 *N.J.* 108, 112, 447 *A.*2d 163 (1982); *Danilla v. Leatherby Ins. Co.,* 168 *N.J.Super.* 515, 518, 403 *A.*2d 925 (App. Div.1979)).

Citing *W.V. Pangborne & Co. v. New Jersey Dept. of Transportation,* 116 *N.J.* 543, 563, 562 *A.*2d 222 (1989), the judge further explained that "the policy reasons for upholding a strict statute of limitations recede where defendant is on notice of the claims, and no significant prejudice results." The judge concluded that UCJF was on notice of the PIP claim against it from the time Alicia filed her notice in May 1992. Additionally, UCJF was a named party in the original complaint filed in March 1994.

The judge reasoned that Alicia's counsel promptly requested payment of PIP benefits after the conclusion of Nestar's complex insurance litigation in July 1996. Thus, under the circumstances presented by the history of this case, the judge concluded that Alicia was not at all dilatory in her prosecution of the matter and therefore deserved an equitable exemption from the formal requirements of the statute.

In discussing *R.* 4:9–3, [13] the judge reasoned:

---

[13] *R.* 4:9–3, "When Amendments Relate Back," provides:

> *Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading; but the court, in addition to its power to allow amendments may,*

R. 4:9–3 allows relation back of an amended complaint to the date on which the original complaint was filed. *Harr v. Allstate Ins. Co.*, 54 *N.J.* 287, 299–300 [255 *A.2d* 208] (1969). Amendments for PIP claims have also been allowed, subject to certain restrictions. *Smelkinson v. Ethel & Mac Corp.*, 178 *N.J.Super.* 465, 470–73 [429 *A.2d* 422] (App.Div.1981). In *Smelkinson,* the Appellate Division outlined the following test: (1) the amendment must satisfy the transactional test established by *R.* 4:9–3; (2) the added party must have had notice of the action, prior to the expiration of the statute, as to enable him to defend the action on the merits without substantial prejudice; and (3) the new party must have known, or should have known, that the action would have been brought against him but for the error of plaintiff in identifying the party. *Smelkinson, supra,* 178 *N.J.Super.* at 471 [429 *A.2d* 422].

We note, Alicia's amended complaint sought to add a *claim* for PIP benefits, but did not seek to add a new *party.* Thus, she was required to meet only the transactional test requirement of *R.* 4:9–3.

We conclude the judge properly found that Alicia had filed a timely Notice of Intent to Make a Claim against the UCJF, thus giving UCJF sufficient notice of the commencement of the action prior to the time the statute of limitations expired. Although her notice did not specifically delineate the nature of her claim, it included a copy of the police report which disclosed injuries. Within ninety days of this accident, the UCJF was fully aware that Alicia was injured and intended to make a claim against the UCJF.

Although the judge focused his analysis on Alicia's claim, his reasoning was equally applicable to Aydee's claim. We note that upon receipt of Alicia's original Notice of Intention to Make a Claim she attached a copy of the police report which identified

---

upon terms, permit the statement of a new or different claim or defense in the pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment, that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party to be brought in by amendment.
[Emphasis added.]

Aydee, a minor, as an injured passenger. Thus UCJF was also then on notice that Aydee, a minor passenger, was injured. Thereafter, when Alicia timely filed her initial complaint, although only seeking compensatory damages, she sought damages individually and as guardian *ad litem* on behalf of Aydee. Moreover, in correspondence with plaintiffs' counsel dated July 26, 1996, before plaintiffs filed their amended complaint seeking PIP benefits, the UCJF admitted liability for plaintiffs' PIP claims, but indicated, "[T]he UCJF will not process payments of PIP bills in the above until all avenues of recovery are exhausted; namely the Cardona agency."

Although the judge's initial conclusions were articulated with reference to Alicia's PIP claim, it seems clear that his conclusions were intended to encompass Aydee's PIP claim, as the judge properly concluded that plaintiffs satisfied the requirements of *R.* 4:9–3. As noted, *R.* 4:9–3 is to be liberally construed so as to achieve substantial justice on the merits. *Smelkinson, supra,* 178 *N.J.Super.* at 471, 429 *A.2d* 422; *see also Harr, supra,* 54 *N.J.* at 299–300, 255 *A.2d* 208. Here, the amended complaint for PIP benefits arose out of the transaction upon which plaintiffs' timely complaint for compensatory damages had been filed. The police report, the original complaint, the notice of intention forms, and the communication from counsel, when read as a whole, fully notified the UCJF that each plaintiff had been injured and each was incurring and would continue to incur medical expenses. Each plaintiff in the initial complaint asserted that each had suffered "personal injuries causing permanent disability, permanent significant disfigurement," and "permanent loss of bodily function."

Defendant UCJF failed to demonstrate any particularized prejudice and, as noted, admitted its responsibility for the payment of PIP benefits, although it declined to process plaintiffs' PIP claims pending Nestar's pursuit of his coverage claim against Cardona. Equitable principles, judicial precedent, and *R.* 4:9–3 support the

judge's decision. *See Lusby v. Hitchner,* 273 *N.J.Super.* 578, 642 *A.*2d 1055 (App.Div.1994).

## IV

Defendant also contends that the judge erred in allowing plaintiffs to proceed with their PIP claims when neither plaintiff fully complied with the notice provisions within *N.J.S.A.* 39:6–65.[14] Although defendant raised this argument before the trial judge, the argument was not addressed in the judge's conclusion.[15]

As we have noted, Alicia's timely filed Notice of Intention to Make a Claim failed to indicate any intent to seek PIP benefits; in fact, the form as filed failed to indicate that she was injured, though the attached police report identified her as an injured passenger.

---

[14] *N.J.S.A.* 39:6–65 provides in pertinent part:

Any qualified person ... who suffers damages resulting from bodily injury ... arising out of the ownership, maintenance or use of a motor vehicle in this State ... and whose damages may be satisfied in whole or in part from the fund, shall, *except in cases in which the claim is asserted by actions brought under section 18 of this act pursuant to section 19 of this act, within 90 days after the accident, as a condition precedent to the right thereafter to apply for payment from the fund, give notice to the board, the form and contents of which shall be prescribed by the board, of his intention to make a claim thereon for damages if otherwise uncollectible;* provided, any such qualified person may, in lieu of giving said notice within said time, make proof to the court on the hearing of an application for the payment of a judgment (a) that he was physically incapable of giving said notice within 90 days after he became physically incapable to do so or in the event he did not become so capable, that a notice was given on his behalf within a reasonable period, or (b) *that he gave notice to the board within 15 days of receiving notice that an insurer had disclaimed on a policy of insurance so as to remove or withdraw liability insurance coverage for his claim against a person or persons who allegedly caused him to suffer damages.*

[Emphasis added.]

[15] The judge's failure to discuss this component of defendant's argument is the primary basis for our rejection of the judge's articulated conclusions of law. Yet, as we initially indicated, we agree with the judge's ultimate conclusion.

Aydee's Notice of Intention to Make a Claim, although indicating the nature of her injury, was filed seven months after the accident and also failed to indicate her intention to seek PIP benefits. Moreover, Aydee's counsel had been informed by Nestar's insurer through HCM four months after the accident that it was disclaiming any responsibility as Nestar was not insured, although the letter from HCM dated July 1, 1992, was in response to Alicia's initial notice.

In *Brookins v. Murray*, 131 *N.J.* 141, 619 *A.*2d 583 (1993), the Court discussed the purpose of the notice provisions delineated in *N.J.S.A.* 39:6–65:

> The time requirements for the notice of claim are designed to encourage "timely inquiry and thus to safeguard the fund against fraud and imposition." *Giacobbe v. Gassert,* 29 *N.J.* 421, 425 [149 *A.*2d 214] (1959). Timely inquiry promotes the verifiability of claims. *See* Marian Joyce, *Tolling the Substantive Statutes of Limitation—White v. Violent Crimes Compensation Board,* 32 *Rutgers L.Rev.* 95, 106 (1979). The time requirements also ensure efficient administration of the Fund and protect the Fund's limited resources. *See Giacobbe, supra,* 29 *N.J.* at 426 [149 *A.*2d 214].
>
> [*Brookins, supra,* 131 *N.J.* at 146, 619 *A.*2d 583.]

The Court also explained the difference between the statutory time constraints of the notice provisions, *N.J.S.A.* 39:6–65, and the statute of limitations:

> The notice requirement that is a condition precedent affects the right of a party to obtain administrative relief. It differs from a general statute of limitations, which is a restriction on the time within which a party must institute judicial proceedings after the accrual of a cause of action. The statutory notice requirement, however, "goes to the validity of the claim itself: absent the required notice, the injured party has no right under the statute to receive compensation." *United States v. Studivant,* 529 *F.*2d 673, 675 (3rd Cir.1976) (construing UCJF statute and holding that United States was precluded from recovering against Fund because statutory notice requirement was condition precedent rather than state statute of limitations and was binding on the United States).
>
> [131 *N.J.* at 152, 619 *A.*2d 583.]

Despite the underlying reasons for time requirements within the notice statute, the Court recognized that those requirements are liberally construed, *id.* at 148, 619 *A.*2d 583, and are often waived for exceptional circumstances, *id.* at 148–49, 619 *A.*2d 583. The Court also recognized that one exception involved minors'

claims, citing with approval *Moore v. Truesdale,* 48 *N.J.Super.* 257, 137 *A.*2d 433 (App.Div.1958), and *Wilkins v. Smith,* 181 *N.J.Super.* 121, 436 *A.*2d 951 (App.Div.1981).

In *Moore,* the court found that the statutory period to give notice is tolled until an infant's guardian *ad litem* is appointed. *Moore, supra,* 48 *N.J.Super.* at 261, 137 *A.*2d 433; *see Wilkins, supra,* 181 *N.J.Super.* at 125–26, 436 *A.*2d 951.

In *Wilkins,* we noted:

[W]e perceive no reason to bar a claim for Gregory Wilkins [16] against the Fund whether we decide the case from the viewpoint of prejudice to the Fund from the passage of time or from considerations of the importance of diligence for its own sake. Surely we ought not hold that the infant plaintiff, who even now is only 14 years old, should be barred because of any dilatory or neglectful conduct on his part. Thus, we rule that the notice on behalf of Gregory Wilkins was timely.

We note that the result we reach in providing for liberal treatment of an infant's claim is consistent with the treatment of such claims by the New Jersey Tort Claims Act, *N.J.S.A.* 59:1–1 *et seq.* That statute allows an infant's notice of claim to be made anytime within his minority and perhaps within 90 days after he reaches majority. *See N.J.S.A.* 59:8–8; *Vedutis v. Tesi,* 135 *N.J.Super.* 337 [343 *A.*2d 171] (Law Div.1975), *aff'd o.b.* 142 *N.J.Super.* 492 [362 *A.*2d 51] (App.Div. 1976). Practically, the result we have reached is similar. As a policy matter within the context of infants' claims, such consistent results seem appropriate.

[*Id.* at 127, 436 *A.*2d 951.]

■ Alicia's Notice of Intention was timely filed, yet her notice was incomplete. She did not answer the question on the form claiming PIP benefits. However, in reviewing the record on appeal, we note that certain deficiencies in Aydee's Notice of Intention were immediately brought to the attention of Aydee's counsel by the letter from UCJF dated December 23, 1992. Alicia never received any communication from the UCJF that her Notice of Intention to Make a Claim was deficient. Viewed from an equitable perspective, Alicia had the right to assume that her Notice of Intention to Make a Claim when filed fully protected her right to assert any cognizable claim against defendant for PIP

---

[16] Wilkins' notice was filed later in time from the accrual of his cause of action than the notice filed on behalf of Aydee following the accrual of her cause of action.

benefits. *See Watford v. Unsatisfied Claim and Judgment Fund Board,* 113 *N.J.Super.* 495, 508–09, 274 *A.*2d 317 (Law Div.1971).

On the other hand, Aydee filed an untimely Notice of Intention. Aydee was a minor, so the guiding principles discussed in *Moore* and *Wilkins* are applicable. The UCJF was fully aware from the police report that Aydee, a minor, was an injured passenger, and Aydee had, through her guardian *ad litem,* filed a timely complaint seeking compensatory damages for a permanent injury. Additionally, defendant admitted responsibility for Aydee's PIP benefits but refused to process her claim pending Nestar's pursuit of his coverage claim against Cardona.

We therefore conclude that plaintiffs should be deemed to have equitably complied with the notice provisions of *N.J.S.A.* 39:6–65.

Affirmed.