MARIE T. BROWN and ARTHUR E. TILLARD, complainants,

*v.*

FIDELITY UNION TRUST COMPANY, substituted trustee, et al., defendants.

[Decided April 14th, 1932.]

*Mr. Andrew J. Whinery,* for the complainants.

*Messrs. Hood, Lafferty & Campbell,* for the defendants.

BĒRRY, V. C.

This case was submitted on the following facts:

Arthur J. King left a will creating a trust fund for his widow for life, or until her remarriage, with remainder to his children. He provided that the shares of his sons should be paid to them when they reached the age of twenty-five years; and that the shares of the daughters should be held during their lives, remainder to their children.

The testator's widow and Francis L. Minton were trustees. She died in 1901, leaving Minton as sole trustee.

In 1916 Mamie L. Tillard, one of the testatrix's daughters, died leaving two children, Marie T. Brown and Arthur E. Tillard, the complainants in this suit, who became entitled to the principal of their mother's share of the trust fund upon her death. Minton, the surviving trustee, did not make any distribution to them; but three years after Mrs. Tillard's death he was discharged as trustee upon petition to the orphans court of Essex county, and the Fidelity Union Trust Company was appointed in his place. He turned over to the Fidelity Union Trust Company all of the assets of the trust estate, and it made distribution of a part thereof, giving to the complainants as their share, a bond and mortgage for $6,000 covering lands in South Dakota.

The will of Arthur J. King authorized the investment in first mortgages on land, and it was supposed by everyone interested in the estate that the $6,000 mortgage assigned to the complainants was a first mortgage.

Soon after the bond and mortgage referred to were turned over to the complainants it was discovered that it was a third mortgage, acquired for the trust estate by Minton in violation of his duties as trustee; that it was wiped out by the foreclosure of a prior mortgage; and that there is no apparent possibility of recovery against the persons who executed the bond which is secured by the mortgage, nor against the estate of Minton, now deceased. Complainants promptly brought these facts to the attention of the substituted trustee, and it endeavored, but without success, to have all of the beneficiaries adjust the $6,000 loss among themselves.

Complainants now ask that the substituted trustee take back the worthless bond and mortgage and pay them $6,000 out of the trust estate still remaining in its hands, so that the loss will fall equally upon all of the beneficiaries.

No authority is cited in any of the briefs, all of the parties saying that they rely upon general principles of equity. I am satisfied that under those principles the complainants are entitled to relief.

A court of equity is a court of conscience.

Professor Pomeroy in his work on Equity Jurisprudence, volume 1, page 61, says that conscience, considered as a source of equity jurisdiction, is synonymous with "good faith." He says that conscience embraces all those obligations which rest upon a person who, from the circumstances in which he is placed towards another and the relations subsisting between them, is bound to exercise good faith in his conduct and dealings with that other person. He says further, "equity is and long has been in every sense of the word a system, and although it is impossible that any new general principles should be added to it, yet the truth stands, and always must stand, *that the final object of equity is to do right and justice.*" He himself italicized that language.

Vice-Chancellor Van Fleet on many occasions declared this to be the equity rule as adopted by our courts. In *Ogden* v. *Thornton, 30 N. J. Eq. 569,* he said: "A court of equity must always aim to act upon broad principles of justice, disentangled as much as possible from little technicalities." And in *Livermore* v. *McNair, 34 N. J. Eq. 478,* "equity cares very little about mere matters of form; it endeavors to deal with the substance of affairs and to regulate its judgment according to the real purposes which have controlled parties in the various matters brought before it for relief or correction."

In *Ogden* v. *Thornton, supra,* Chief-Justice Beasley, speaking for the court of errors and appeals (*32 N. J. Eq. 723, 727*), said: "In either case the transaction was such that it cannot be allowed to stand in a court of conscience."

558

The mere fact that there is no precedent to fit the case will not stay the hand of the chancellor. Chancery will make a precedent to fit a case, novel in incident, which comes within some head of equity jurisprudence. *Palmer* v. *Palmer, 84 N. J. Eq. 550; 95 Atl. Rep. 241.*

It was through no fault on the part of the complainants, either affirmative or negative, that the loss occurred. They had a right to believe that the trustees were performing the terms of the will and making only such investments as they were enjoined by the testator to make. They were under no duty to investigate into the validity of the security turned over to them as a portion of their distributive share of the estate. The principles of estoppel cannot be invoked against them. This was not a specific legacy; neither is it the case of a lawful investment (within the terms of the trust) turning out to be bad through circumstances beyond the control of the trustees.

The testator intended that the complainants should receive a certain distributive share of his estate; but they received nothing when they were given these worthless scraps of paper. His intention must be carried out; and effect can be given to his intention only if the complainants prevail.

I shall advise a decree for the complainants.