734 A.2d 367 (1999)
Larry S. LOIGMAN; and Tracy Loigman, Plaintiff,
v.
KINGS LANDING CONDOMINIUM ASSOCIATION, INC.; and John J. Brogan, Esq., Defendants.
Superior Court of New Jersey, Chancery Division, Monmouth County.
Decided May 5, 1999.
*369 Larry S. Loigman, Middletown, for plaintiffs.
Brogan & Brogan, P.C., Shrewsbury, (John J. Brogan, appearing), for defendants.
*368 FISHER, P.J.Ch.
I

INTRODUCTION
Plaintiffs own a condominium which the defendant condominium association has encumbered with a lien for unpaid assessments. Because plaintiffs were not given adequate notice of the recording of the lien as required by the New Jersey Condominium Act, and because it was recorded in violation of the Fair Debt Collection Practices Act, the lien will be discharged.
The Master Deed and Bylaws of defendant Kings Landing Condominium Association ("the Association") permit the imposition of a lien for unpaid assessments as authorized by N.J.S.A. 46:8B-21(a).
The undisputed factual circumstances surrounding the imposition of the lien can be summarized as follows:
 the lien in question[1] was executed on November 3, 1998;
 on November 23, 199820 days laterthe Association demanded payment of the amount alleged to be due, advising plaintiffs that if they failed to pay, the Association would pursue "its available legal remedies ... [including] the institution of a collection lawsuit and/or the filing of a Notice of Lien Claim";
 on November 25, 1998, plaintiffs disputed the validity of the debt and requested an itemization of how the amount was calculated;
 the lien was recorded with the county clerk on December 16, 1998, notwithstanding that defendants made no response to plaintiffs' request for verification by that time;
 defendants finally provided an analysis of the amount claimed to be due on December 29, 199813 days after the lien was recorded.
 plaintiffs never learned defendants recorded the lien until they attempted to sell their unit to a third party.
Plaintiffs seek a judgment discharging the lien. Because they correctly claim the recording of the lien was contrary to the New Jersey Condominium Act ("NJCA")[2] and the Fair Debt Collection Practices Act ("FDCPA")[3], the lien will be discharged and the remaining damage claims transferred to the Law Division, Special Civil Part and consolidated with the Association's claim for monetary damages already pending there.

*370 II

THE APPLICATION OF THE NJCA
N.J.S.A. 46:8B-21(a) authorizes a condominium association to include within its Master Deed or Bylaws a provision permitting the imposition of a lien for unpaid assessments. The condominium documents applicable to this case include such provisions. Plaintiffs do not question the Association's authorization to record a lien on plaintiffs' unit but contend that defendants did not give adequate notice. In resolving this issue, the court must gauge what degree of notice must be given in order to make the lien effective since N.J.S.A. 46:8B-21(a) only states, without specification, that the association shall have and may record such a lien "upon proper notice to the appropriate unit owner."[4]
Defendants contend "proper notice" was given when a letter was sent to plaintiffs on November 23, 1998 advising that collection efforts, including the filing of a lien, would be pursued if certain assessments were not paid. The Legislature did not define what it meant by "proper notice," but it would seem apparent it must have intended to impose that type of notice which would give the unit owner knowledge of the lien's existence and an opportunity to do something about it. The notice sent by defendants merely advised plaintiffs of the potentialsometime in the futureof the Association's pursuit of legal remedies. It did not say when these efforts would occur nor did the letter say which of these remedies would be pursued. Rather, the Association only made the ambiguous assertion that it might commence a lawsuit "and/or" file a lien.[5] And when defendants ultimately forwarded a Notice of Lien to the county clerk's office for recording, no notice was simultaneously, or at any time thereafter, given to plaintiffs.
The filing of a lien is a "form of taking," Trus Joist Corp. v. Treetop Associates, Inc., 97 N.J. 22, 31, 477 A.2d 817 (1984), because it "destroys the ability of a property holder to convey marketable title," United S. & L. Ass'n v. Scruggs, 181 N.J.Super. 52, 57, 436 A.2d 559 (Ch.Div. 1981). Accordingly, the property owner is entitled to constitutionally-guaranteed due process, as well as the process guaranteed by N.J.S.A. 46:8B-21. The only question concerns the amount of process due. In this court's view, the proper balancing of the rights of both a unit owner and a condominium association requires that the association provide simultaneous notice, or notice within a reasonable time thereafter, of the recording of the lien. Certainly, an association has a right to collect any appropriate fees through the coercive effect of a lien, but the purpose of any of these procedures is to insure payment of valid assessments to the association. How, it may be rhetorically asked, is that purpose enhanced by the association's ex parte filing of the lien? If, as here, the unit owner is deprived of knowledge that the lien has been filed, neither the force of its imposition increases the likelihood of the association to be paid nor does it provide the unit owner with a minimal amount of due process in its imposition.
These concerns seem to be embodied in the very events which occurred in this case. The record reveals there are currently three liens for unpaid assessments on this particular unit. Two of those liens have been satisfied, yet the Association never discharged them and plaintiffs never knew of them, thereby depriving plaintiffs of the opportunity to *371 have the liens discharged through formal or informal action. It seems to this court a small thing for an association to provide a copy of the lien to the unit owner at or about the time it is sent to the clerk for recording. If the association is acting inappropriately in connection with that filing, the unit owner will know and have an opportunity to seek its removal. If the association is acting properly in filing the lien, and the unit owner wants to keep the unit free from such an encumbrance, then it will be satisfied and the primary goal of the associationto be paidwill have been met. And if the lien is proper and the unit owner fails to satisfy it, then the association retains what is urged here: the right to prevent transfer of the property until the lien is satisfied. None of the interests which the Association seeks to vindicate are weakened by requiring simultaneous notice of the recording of the lien. The only interest that would be served would be the inappropriate desire to ambush the unit owner upon selling the unit. This court cannot imagine the Legislature intended to provide condominium associations with the right to surreptitiously record a lien. For these reasons, the court finds defendants failed to provide plaintiffs with adequate notice of the recording of the lien in question. To remedy that shortcoming, the lien will be discharged.

III

THE APPLICATION OF THE FDCPA
This conclusion is also militated by virtue of the FDCPA. Plaintiffs contend (1) condominium assessment fees fall within the FDCPA's definition of "debt," (2) the actions of attorneys in collecting a debt or pursuing legal relief for a client fall within the FDCPA, and (3) defendants failed to comply with the procedures set forth in the FDCPA, warranting a discharge of the lien. Defendants dispute all these assertions.

A
Congress defined "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). The Court of Appeals for the Third Circuit concluded that the term "debt" required an offer or extension of credit. Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1168-1169 (3d Cir.1987). From this, some federal district courts concluded that obligations such as condominium assessments were excluded from the FDCPA's definition. See, e.g., Archer v. Beasley, 1991 WL 34889, Civ. No. 90-2576 (CSF) (D.N.J.1991); Azar v. Hayter, 874 F.Supp. 1314 (N.D.Fla.1995); Nance v. Petty, Livingston, Dawson and Devening, 881 F.Supp. 223 (W.D.Va.1994). But Zimmerman has now been rejected by the Courts of Appeal for the Seventh Circuit, Newman v. Boehm. Pearlstein & Bright, Ltd., 119 F.3d 477 (7th Cir.1997); Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1326 (7th Cir.1997); the Eighth Circuit, Duffy v. Landberg, 133 F.3d 1120, 1123-1124 (8th Cir.1998), cert. denied ___ U.S.___, 119 S.Ct. 62, 142 L.Ed.2d 49 (1998); the Ninth Circuit, Charles v. Lundgren & Assoc., P.C., 119 F.3d 739, 742 (9th Cir.1997), cert. denied ___ U.S.___, 118 S.Ct. 627, 139 L.Ed.2d 607 (1997); the Tenth Circuit, Ladick v. VanGemert, 146 F.3d 1205, 1206 (10th Cir.1998); and the Eleventh Circuit, Brown v. Budget Rent-A-Car Sys., Inc., 119 F.3d 922, 924 (11th Cir.1997); and criticized by the Court of Appeals for the Second Circuit, Romea v. Heiberger & Associates, 163 F.3d 111 (2d Cir.1998). Indeed, these other courts of appeals found no evidence that Congress intended to extend FDCPA protection only to debts which include the extension of credit, choosing, instead, to focus on the requirement that the debt primarily relate to *372 "personal, family or household purposes," in rejecting Zimmerman's more narrow approach.[6] There now seems to be no question but that a claim for the payment of condominium assessments falls within the scope of the FDCPA. See, Newman, supra; Ladick, supra; Thies v. Law Offices of William A. Wyman, 969 F.Supp. 604, 607 (S.D.Cal.1997); Taylor v. Mount Oak Manor Homeowners Association, 11 F.Supp.2d 753, 754 (D.Md.1998). The approach of the Second, Seventh, Eighth, Ninth, Tenth and Eleventh Circuits is well taken since it relies upon the plain language of the statute, which contains no reference to a requirement that an extension of credit be involved in the debt. Accordingly, the court will follow that view rather than the Third Circuit's contrary holding.[7]

B
The Association contends the FDCPA does not apply to its attorney, also a defendant in this action. Any such contention is clearly erroneous. There is no longer any question that an attorney's actions in pursuing the collection of a debt, either informally or through litigation, falls within the FDCPA. Heintz v.. Jenkins, 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995).

C
Since both the Association and its counsel were bound to comply with the FDCPA, and since the debt they were attempting to collect through the imposition of the lien also falls within the parameters of the FDCPA, the court must then consider whether the FDCPA was breached and, if it was, whether the breach should impact upon the lien.
The FDCPA requires a debt collector to give notice prior to commencing legal action or any other collection activities. The legal action in question is the recording of the lien on December 16, 1998. Thus, the court must examine defendants' earlier communications to determine whether defendants gave the notice required by the FDCPA. While plaintiffs argue that the first attempt by defendants to comply with the FDCPA occurred on December 29, 199813 days after the recording of the lienthis court is satisfied that the Association's November 23, 1998 letter meets the requirements of 15 U.S.C. § 1692a since it
 identifies the amount of the debt, 15 U.S.C. § 1692a(1), i.e., $3,380;
 identifies the name of the creditor, 15 U.S.C. § 1692a(2), i.e., Kings Landing Condominium Association, Inc.;
 advises the debtor that if the validity of the debt, or any part of it, is disputed then the debtor must so advise within 30 days or the debt will be assumed to be valid, 15 U.S.C. § 1692a(3); and
 contains a statement that if the debtor notifies the creditor within 30 days that the debt or any part of it is disputed, then the creditor will provide verification of the debt before proceeding *373 with further collection activity, 15 U.S.C. § 1692a(4).
Plaintiffs claim this letter is insufficient to meet the requirements of the FDCPA because defendants did not expressly invoke the FDCPA and, in fact, never invoked the FDCPA until the letter of December 29, 1998. Plaintiffs have cited no authority to support this contention. Since such an argument exalts form over substance, and has no ostensible salutary purpose, the court rejects the invitation to hold that the mere failure to cite the FDCPA in a communication with a debtorwhen all other substantive requirements have been met constitutes a violation of the FDCPA.
Contrary to those contentions, the court finds defendants complied with the FDCPA when sending the November 23, 1998 letter to plaintiffs. Nevertheless, defendants thereafter breached the FDCPA by failing to halt its collection efforts after plaintiffs questioned and sought verification of the amount of the debt. It is unchallenged that plaintiffs wrote to dispute and question the debt on November 25, 1998. From that moment, until they provided verification of the debt on December 29, 1998, defendants were obligated to cease all collection efforts. 15 U.S.C. § 1692g(b). Accordingly, any further attempt by defendants to collect on the debt between November 25, 1998 and December 29, 1998including their recording of the lien with the county clerk on December 16, 1998was in breach of the FDCPA. See, e.g., Ditty v. CheckRite, Ltd., Inc., 973 F.Supp. 1320, 1329 (D.Utah 1997); Trull v. GC Services Ltd. Partnership, 961 F.Supp. 1199, 1205 (N.D.Ill. 1997); Rabideau v. Management Adjustment Bureau, 805 F.Supp. 1086, 1092 (W.D.N.Y.1992).
Interestingly, the FDCPA expressly creates only a cause of action for monetary relief, and is silent with regard to a court's ability to provide equitable relief as sought here. The FDCPA does not, however, prohibit the granting of equitable relief, including the discharging of a lien filed at a time when the creditor is prohibited by the FDCPA from taking further collection efforts. Where a "legal right has been infringed, a remedy will be given," is how Pomeroy expressed the equitable maxim more commonly phrased "equity will not suffer a wrong without a remedy." 2 Pomeroy, Equity Jurisprudence (1941) § 423. In the absence of legislative prohibition, the power of a court of equity to remedy a wrong exists. It then becomes the province of the court to determine whether, under the particular circumstances of the case, the remedy should be provided. Other than the absence of a provision in the FDCPA which would expressly support such a conclusionwhich only creates a vacuum, not a prohibition the court can fathom no reason why it may not, in good conscience and in the discretionary exercise of its equitable powers, remedy the actions taken by the Association in breach of 15 U.S.C. § 1692g(b) by ordering a discharge of the lien.

IV

CONCLUSION
The liens recorded by the Association will be ordered discharged and the Association will be left to its monetary remedies. Those claims will be transferred and consolidated with the pending Special Civil Part action previously commenced by the Association.
NOTES
[1] In fact, there are three liens on record in the county clerk's office regarding this property. Defendants concede that the two earlier liens relate to unpaid assessments which were paid prior to the recording of the third lien. Defendants agree those two liens should be discharged.
[2] N.J.S.A. 46:8B-1 to 8B-38.
[3] 15 U.S.C. § 1692.
[4] Interestingly, the Association failed to include the provision which requires "proper notice" when quoting the statute in its brief. See, Db at 2.
[5] Defendants' use of the phrase "and/or" in connection with its promise of the further pursuit of legal remedies was hardly helpful in conveying to the unit owner the likelihood that a lien would be recorded. See, e.g., In re Massey, 317 N.J.Super. 302, 721 A.2d 1033 (Ch.Div.1998).
[6] The district court decisions cited earlier, which were relied upon by defendants, followed the now-discredited Zimmerman holding; indeed, the District of New Jersey in Archer was bound to follow Zimmerman.
[7] State courts are not bound by the decisions of lower federal courts, Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 79, 577 A.2d 1239 (1990), and the fact that New Jersey is within the geographic region of the Third Circuit imposes no obligation to follow the Third Circuit on matters of federal law, Mid-State Securities Corp. v. Edwards, 309 N.J.Super. 73, 77, 706 A.2d 773 (App.Div.1998), certif, denied 156 N.J. 379, 718 A.2d 1208 (1998). Rather, in construing federal law in the absence of clear direction from the Supreme Court of the United States, state courts will accord lower federal court decisions "due respect." Dewey, supra, 121 N.J. at 80, 577 A.2d 1239. Uniformity is the goal and "judicial comity," in that sense, is applied to avoid forum shopping. Id. Accordingly, a state court placed in the position of ascertaining the content of federal law should look for the view taken by a majority of the lower federal courts. The Third Circuit's holding in Zimmerman obviously reflects a minority view.