783 A.2d 271 (2000)
345 N.J. Super. 41
Dawn E. APARIN, Douglas A. Daniels, Edward Dwyer, Rose Lee Fleming, Joseph F. Gorecki, Elmer Hammel, David R. Hubert, Jr., Robert H. Johnson, Adrian Lugo, Jr., and George W. Wagner, Jr., Plaintiffs,
v.
COUNTY OF GLOUCESTER and Board of Chosen Freeholders of Gloucester County, Defendants. and
County of Gloucester and Board of Chosen Freeholders of Gloucester County, Third-Party Plaintiffs,
v.
New Jersey Department of Personnel, Janice Mitchell Mintz, Commissioner, New Jersey Department of Personnel, Third-Party Defendants.
Superior Court of New Jersey, Law Division, Civil Part, Gloucester County.
Decided August 30, 2000.
*273 Thomas H. Ward, Woodbury, for plaintiffs, Dawn E. Aparin, et al. (Albertson Ward, attorneys).
William M. Tambussi, Westmont, for defendants/third-party plaintiffs County of Gloucester and Board of Freeholders of Gloucester County (Brown & Connery, attorneys, Joseph T. Carney on the brief).
*272 The opinion of the Court was delivered by HOLSTON, J.S.C.
The plaintiffs, individual Gloucester County Park Rangers, filed a verified complaint and Order to Show Cause in this action in lieu of prerogative writs, directing that defendants, County of Gloucester and Board of Chosen Freeholders of Gloucester County, show cause why a writ of mandamus should not issue compelling Gloucester County to provide Police Training Commission approved training to County Park Rangers who are employed and appointed by defendants. In response, defendants brought a motion to dismiss plaintiffs' complaint pursuant to R. 4:6-2(e), or, in the alternative, for summary judgment under R. 4:46. This court ruled in favor of the plaintiffs and issued a writ of mandamus directing defendants to provide the police training required by Department of Personnel Job Specification 01414, from which the plaintiffs had been hired. The Appellate Division reversed this court's Order in order to discover the State's position on the issues addressed by this litigation. The parties have, pursuant to the discovery Order issued by this court, after the third-party complaint joining the State of New Jersey was filed, deposed Pamela Hamilton-Bond, the supervisor of the Police Training Commission (PTC) and Marjorie Ann *274 Schwartz, the director of the Division of Human Resource Management for the Department of Personnel.
Pursuant to the Order of the Appellate Division, the plaintiffs now renew their motion for summary judgment. Plaintiffs seek a judicial determination that the defendants are required, as a matter of law, to provide to the Gloucester County Park Rangers in the classified service, training courses which are approved by the PTC, as required by Department of Personnel Job Specification 01414, issued pursuant to N.J.S.A. 11A:3-1 and administrative regulations promulgated pursuant thereto. Plaintiffs also request that the court issue a writ of mandamus ordering the defendants to provide such training. The defendants have filed a cross-motion for summary judgment dismissing the plaintiff's complaint.
The factual backdrop to this matter is as follows. Each of the plaintiffs applied for and took the examination for the position of County Park Ranger through the New Jersey Department of Personnel. The position of County Park Ranger is a job title in the career service established pursuant to N.J.S.A. 11A:3-1. In consequence of the establishment of a job title, the Commissioner developed a classification plan, according to N.J.A.C. 4A:3-3.2(b)(2), which "provides a job specification for each title, which shall include a descriptive summary of duties and responsibilities of a position or group of positions which are sufficiently similar in content to be assigned a job title."
The New Jersey Department of Personnel has promulgated Job Specification Number 01414 for the title of "County Park Ranger"; this Specification provides, in part: "NOTE: Appointees will be required to successfully complete a training program mandated by the New Jersey Police Training Commission within 18 months of appointment." The Law Enforcement Candidate Record Exam (LECR) requirements, also promulgated by the Department of Personnel, also states: "Appointees will be required to successfully complete a training program mandated by the New Jersey Police Training Commission...." This suit was instituted by plaintiffs following employment for over 18 months, and after which time defendants had not provided them with the job training discussed in the Specification.
In the fall of 1998, the New Jersey Department of Personnel performed a desk audit of plaintiffs Douglas Daniels and Robert Johnson to determine if their duties and responsibilities were within the scope of the job title of County Park Ranger. The Department of Personnel, in a November 18, 1998 letter to James B. Cannon, the Personnel Director of the Department of Administration of Gloucester County, stated in pertinent part:
This data revealed that the primary function of the incumbent is the patrolling of the County Park properties for the purpose of ensuring the welfare and safety of the property itself as well as the patrons of the park who are utilizing the facility. This duty is governed by a myriad of park rules and regulations which the incumbent is charged with enforcing by means of a system which requires the use of independent judgment to determine when and if a Police Officer is necessary, or if intervention by the County Park Ranger is sufficient.
The audit revealed that at any given time the single authority figure present at the facility is the ranger and all public relation duties, injury management and safety and sanitation duties are funneled through him/her. The ranger is responsible for the dissemination of information to the public and for the welfare of all who are on the property. These *275 duties are clearly recognized by the patrons of the park.
This letter concluded that Mr. Daniels was appropriately classified as a County Park Ranger, and that the defendants could, if they wished, appeal that decision within 20 days of the letter. Such an appeal was never made.
In a letter dated March 27, 1998, the New Jersey Department of Personnel advised the defendants that training approved by the PTC was required to be given to County Park Rangers. Likewise, in a letter dated September 29, 1998, the PTC advised the defendants that an approved training program for County Park Rangers exists and that such was required.
Gloucester County has neither a County Park Commission nor a Board of Recreation Commissioners.
The depositions of Pamela Hamilton-Bond, the supervisor of the PTC, and Marjorie Ann Schwartz, the director of the Division of Human Resource Management for the Department of Personnel, revealed the following. Six New Jersey counties, including Gloucester County, appoint and utilize County Park Rangers from an eligibility list developed by the Civil Service Commission, as a result of potential candidates taking the LECR. According to Ms. Hamilton-Bond's testimony, the other five counties which utilize County Park Rangers are each in compliance with the mandated training approved by the PTC. Ms. Hamilton-Bond also testified that, as long as one is classified in civil service as a County Park Ranger, the PTC training is required. Likewise, Ms. Schwartz acknowledged that the PTC mandated training is still a requirement of the Department of Personnel. When asked why this training is required, Ms. Hamilton-Bond stated:
Partly because the idea is to have, since there are at least six counties that have county parks and, therefore, have County Park Rangers, that the training would be consistent amongst all of the counties ... [I]t appears different counties may do things a little different, but the commissioners have decided these persons are law enforcement personnel, you'll be encountering people in the woods trying to have a nice picnic, but I'm sure there are people that are encountered in the parks that are going to be doing illegal activities or potentially taking advantage of other individuals in the park, and all of the potential contacts that a park ranger is going to have with an individual in the park may not be all pleasantries. And because they potentially have to detain or arrest people, that's why there's training in our curriculum that talks about the law and the elements of different offenses so you'd be able to recognize if you were watching somebody, or attempting to be sexually assaulted or assaulted, that is why there's training what are the elements of that crime. To use the force components of how you're going to restrain somebody, even if they don't carry guns, I'm sure there are people you will encounter in the parks that do have weapons, how to take those things away from people so the ranger doesn't get hurt or anybody else in the park can get hurt, and of course the first aid training, we now require they have first aid and CPR training so they can provide medical help in an instance where maybe before the EMT people can get there, so they can do life saving.
Ms. Hamilton-Bond further testified that "there are general duties that belong to all the County Park Rangers, that's why there was a course developed for County Park Rangers back in 1989, so there would be consistent training amongst all the County Park Rangers." In answer to the *276 question of where, statutorily, the rangers' power to arrest is derived, Ms. Hamilton-Bond replied that there was a legal opinion written by Greg Schultz, then legal counsel to the PTC, who issued an opinion to Leo Klug, then head of the PTC, that, due to a variety of statutes and the duties and responsibilities that County Park Rangers have, they are considered law enforcement officers. That letter, dated January 30, 1981, concludes that N.J.S.A. 40:12-6, when read in conjunction with N.J.S.A. 52:17B-67, causes County Park Rangers to come within the purview of the Police Training Act, as said rangers are members of a "`law enforcement unit' ... which has, by statute or ordinance, the responsibility of detecting crime and enforcing the general criminal laws of the state."
Ms. Hamilton-Bond also opined, "Unfortunately, the Police Training Act doesn't have any teeth in our statute. We really have no way to compel somebody to be trained. I mean, and if we find out that people haven't been, legal counsel generally advises them ... `You're really liable for a lot of problems here; the officer could be hurt ... You have nothing to back you up. The county is liable for anybody that gets hurt or injured in the park; the individual rangers can be hurt ...'"
With respect to the issue of the appeal of final decisions from the PTC, Ms. Hamilton-Bond stated, "They're generally appeals that come from recruits that are in class saying they were unfairly dismissed." Ms. Hamilton-Bond further testified that if the County of Gloucester or the plaintiffs wanted the Commission to review any matter, that the procedure is "generally a letter, I mean it's not like we have some kind of a form you have to fill out; a letter on stationery making a request is generally all it takes."
Ms. Hamilton-Bond also indicated in her deposition that there is no cost to the county for the training course, and that Gloucester County could request the PTC to run the course, which is approximately three weeks in length, at the Gloucester County Police Academy.
In her deposition, Ms. Schwartz opined that the Department of Personnel, as a matter of standard practice, includes any statutory requirements for any job class certification. Ms. Schwartz was also of the opinion that there was statutory authority for the PTC to designate required training, but was also of the opinion that the Department of Personnel had no authority to compel training. Ms. Schwartz also indicated that if a governmental entity did not like the requirements of a job classification, the requirements could be challenged through the Department of Personnel. She testified, "... If someone is having difficulty recruiting for a position because the requirements are too high ... they can appeal to our department to lower the minimum requirements or to substitute an amount of experience...."
Plaintiffs argue that the New Jersey Department of Personnel and the New Jersey PTC have both expressly advised defendants to provide training for plaintiffs. Further, plaintiffs state that defendants can no longer take issue with either the classification of plaintiffs as County Park Rangers, nor the characterizations of the safety aspects of their employment as designated by the Personnel Department's letter, since, as no appeal was made by defendants, they are now bound by the decision under the doctrines of res judicata and collateral estoppel. Plaintiffs argue that since the Specification is clear, specific, and leaves no room for discretion as to mode of performance, a writ of mandamus should be issued to compel performance of the defendants. Furthermore, plaintiffs argue that lack of appropriate training will put the safety and welfare of park patrons *277 at risk since safety is a primary objective of park ranger duties.
Plaintiffs point out that the County of Gloucester operates under the Civil Service Act, N.J.S.A. 11A:1-1 to 11A:12-6, and that each plaintiff applied through the Civil Service Act Job Specification 01414 as issued by the Department of Personnel which sets forth the requirements of the classified position of County Park Ranger, which in its "Requirements" section stated: "NOTE: Appointees will be required to successfully complete a training program mandated by the New Jersey Police Training Commission within 18 months of appointment." Once a county governmental unit decides to operate under civil service, Title 11A, it then has no discretion to deviate from the Job Specification. Thus, it is argued, any discretion on the part of the defendants to disregard the "requirements" ended when it chose to operate under the Civil Service Act.
Plaintiffs state that the authority of the PTC, to establish classification plans, is found in N.J.A.C. 4A:3-3.2, that the Commission's power to enact specifications is found in N.J.A.C. 4A:3.3-3.3(a)(3), but argue that the County of Gloucester lacks corresponding legal authority. In response, defendants argue that N.J.S.A. 11A:6-25 governs state training programs but lacks a corresponding statute applicable to political subdivisions.
Plaintiffs further argue that the testimony of Ms. Hamilton-Bond and Ms. Schwartz, both quoted and paraphrased above, supports the plaintiffs' position that the PTC and the Department of Personnel both believe that there is statutory authority for the Department of Personnel, through its job specifications, to mandate uniform training of County Park Rangers in accordance with the requirements of the PTC.
Defendants argue that the training sought by plaintiffs is not required, since the Gloucester County Park Rangers are not police officers and do not carry out the duties of police officers. In support of this contention, defendants state that park rangers are instructed to call the police department when police are needed, must use their "independent judgment" to determine if police officers are necessary, are told to avoid situations with the potential for physical confrontation, and have been counseled in the past when they have exceeded these limitations on their authority. Defendants point to a decision of the New Jersey Public Employment Relations Commission, later affirmed by the Appellate Division, which declared that "park rangers are not park police." In re Monmouth County and Monmouth County Board of Recreation Commissioners, 13 NJPER ¶ 18244, Docket No. RO-86-22 (1987); NJPER Supp2d 170, Docket No. A-5998-86T8 (1988).
Defendants argue that the County and the Board are statutorily permitted to create a park police unit if they desire, but have, in their discretion, refrained from doing so. To support their position that the Board has discretion in its decision to hire park police, defendants cite N.J.S.A. 40:32-2.6:
Any county maintaining any public park or public recreation area as authorized by the act hereby supplemented, except for counties with county park commissions, may appoint and establish a constabulatory to preserve order in the parks, parkways and recreation areas under its control, and to secure the enforcement of the rules and regulations adopted by it, and may organize the constabulatory into a police system to be known as the "park police of the county of...."
*278 Defendants argue that, as the functions of park rangers vary from county to county, and as the Specification notes that a "particular position using this title may not perform all duties listed in this job specification," the training at issue is unnecessary since Gloucester County Park Rangers do not perform the duties for which the training program is designed to prepare. Instead, defendants assert that plaintiffs were adequately trained for their duties, through the Gloucester County Police Academy, in the use of self-defense and pepper spray.
Defendants argue that New Jersey statutory provisions governing police training do not mandate that Gloucester County Park Rangers train at a facility approved by the PTC, and therefore the opinions of the Department of Personnel and the PTC are misguided. According to defendants, N.J.S.A. 52:17B-68 mandates only police officers, adult or juvenile detention corrections officers and juvenile detention officers to complete a police training course approved by the PTC. Defendants argue that park rangers have not been authorized to enforce the criminal laws of New Jersey, and thus do not fall within the definition of a law enforcement unit under N.J.S.A. 52:17B-67.
Defendants argue that Ms. Hamilton-Bond and Ms. Schwartz concede they have no legal authority to compel the PTC training for those in local service, and that job specifications are merely tools that the Department of Personnel uses to classify positions. Based upon the deposition of Ms. Hamilton-Bond, defendants also argue that what training is required for Gloucester County Park Rangers should be decided administratively and not by way of a complaint in lieu of prerogative writs in the Superior Court. Ms. Hamilton-Bond answered "No" when asked, "Has the Police Training Commission issued a final decision on the issue of the training of the Gloucester County Park Rangers?" Defendants thus argue that since the training has not been reviewed by the PTC to the point of a final agency decision, this court must dismiss the plaintiffs' complaint in lieu of prerogative writs, and permit the parties to pursue administrative remedies. Plaintiffs, in reply to this argument, argue that R. 4:69-1 et seq. provides the procedure to compel compliance by a government authority, and thus the lack of specific statutory language granting the PTC and the Department of Personnel to compel compliance is simply irrelevant.
Defendants further argue that a writ of mandamus is an extraordinary remedy, according to New Jersey case law, and cannot be issued to direct public entities how to exercise their discretion. Additionally, defendants argue that the doctrines of res judicata or collateral estoppel cannot bar defendants from contesting the park rangers' right to training, as an administrative decision should not be likened to actual litigation, and as the issue of training was never raised before the Department of Personnel.
R. 4:69-1 grants to the Law Division the powers of review, hearing and relief which had previously been available by prerogative writs. "If the complaint demands the performance of a ministerial act or duty, the plaintiff may, at any time after the filing of the complaint, by motion supported by affidavit and with briefs, apply for summary judgment." R. 4:69-2.
One of the ancient prerogative writs is that of mandamus. This writ is properly issued to compel performance in a specified manner of ministerial duties so plain in point of law and so clear in matter of fact that no element of discretion is left to the precise mode of performance. Switz v. Middletown Tp., 23 N.J. 580, 587-588, 130 A.2d 15 (1957). "Mandamus lies *279 to remedy official inaction where the right to be enforced or the duty to be performed is certain and specific." Gallena v. Scott, 11 N.J. 231, 238, 94 A.2d 312 (1953). The writ "is available only where there is a clear and definite right to the performance of a ministerial duty in essence mandatory and final and wholly free of the element of discretion...." Id. (citation omitted).
I first note that plaintiffs' arguments, concerning the effect of collateral estoppel and res judicata as to the issue of their right to training approved by the PTC, are refutable. The doctrine of res judicata "refers broadly to the common law doctrine barring relitigation of claims or issues that have already been adjudicated." Velasquez v. Franz, 123 N.J. 498, 505, 589 A.2d 143 (1991) (citation omitted.) Likewise, "[t]he doctrine of collateral estoppel, or issue preclusion, `bars relitigation of any issue [that] was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action.'" Zirger v. General Accident Ins. Co., 144 N.J. 327, 337, 676 A.2d 1065 (1996) (quoting State v. Gonzalez, 75 N.J. 181, 186, 380 A.2d 1128 (1977)). As defendants accurately note, the purpose of the desk audits was to determine if the park rangers in question were properly classified, and thus, the administrative opinion letter which such an audit produced was not the result of the litigation of any claim or issue. Thus, the plaintiffs are not entitled to prevail in this litigation under the doctrines of either collateral estoppel or res judicata.
The New Jersey legislature adopted the Civil Service Act, now N.J.S.A. 11A:1-1 to 11A:12-6, for the purpose of removing employment in classified service from political control, partisanship and personal favoritism, and to maintain stability and continuity in ordinary public employment, and as such it therefore behooves the judicial branch to give the widest possible range of law to this statute. Connors v. City of Bayonne, 36 N.J.Super. 390, 396, 116 A.2d 48 (App.Div.1955), certif. denied, 19 N.J. 362, 117 A.2d 203 (1955). According to the Civil Service Act, the Commissioner of Personnel shall "[e]stablish, administer, amend and continuously review a State classification plan governing all positions in State service and similar plans for political subdivisions ..., [e]nsure the grouping in a single title of positions with similar qualifications, authority and responsibility ..., and [p]rovide a specification for each title." N.J.S.A. 11A:3-1. In determining whether a person is within a classified service under the Civil Service Act, the courts' duty to give the widest possible range to the Act can be satisfied only by declaring for inclusion unless clear exclusion is manifested by specific listing of unclassified positions, and doubt should be resolved in favor of inclusion unless violence would be done to statutory language otherwise. Walsh v. Dep't of Civil Service, 32 N.J.Super. 39, 43-44, 107 A.2d 722 (App.Div.1954).
The County of Gloucester operates under the Civil Service Act, and each plaintiff in the case at bar made application for the position of County Park Ranger through the Department of Personnel's civil service Job Specification 01414. According to the court in Mastrobattista v. Essex County Park Comm'n, 46 N.J. 138, 215 A.2d 345 (1965), classified service includes civil service personnel, except policy makers such as elected officials and department heads and other groups specifically listed within the unclassified service. Clearly, the legislature can exempt parts of county government from civil service if it chooses. Atlantic Community College v. Civil Serv. Comm'n, 59 N.J. 102, 113, 279 A.2d 820 (1971). And indeed, the Civil Service Act does just that, allowing for *280 "unclassified" positions for employees both of the state and political subdivisions. N.J.S.A. 11A:3-5 provides, in pertinent part:
"The political subdivision unclassified service shall not be subject to the provisions of this title unless otherwise specified and shall include the following: ... (n). Employees of county park commissions, appointed pursuant to R.S. 40:37-96 through R.S. 40:37-174, in counties of the second class ... (u). Any title as provided by statute or as the board may determine in accordance with criteria established by rule...."
Defendants do not argue that plaintiffs fall within the provisions of N.J.S.A. 11A:3-5, and indeed they do not. As defendants have indicated, Gloucester County does not have a county park commission. Nor do the statutes upon which defendants rely contain language placing plaintiffs in an unclassified civil service political subdivision. Further, with the exception of collective bargaining rights under the New Jersey Employer-Employee Relations Act, the Civil Service Act provides that "[a]ny law or statute which is inconsistent with any of the provisions of this title are to the extent of the inconsistency... superseded." N.J.S.A. 11A:12-1.
Regulations enacted pursuant to the Civil Service Act provide, in part that, "The Commissioner shall establish and maintain classification plans for all job titles in the career, senior executive and unclassified services ... The classification plans shall consist of ... [a] job specification for each title, which shall include a descriptive summary of duties and responsibilities of a position or group of positions which are sufficiently similar in content to be assigned a job title." N.J.A.C. 4A:3-3.2(a) and (b). Thus, ultimately the Civil Service Act has authorized the "Requirement" promulgated by the Specification, now being litigated, which states, "Appointees will be required to successfully complete a training program mandated by the New Jersey Police Training Commission within 18 months of appointment." This requirement constitutes a duty and responsibility as defined by N.J.A.C. 4A:3-3.2. Defendants' argument that this regulation is a portion of the Specification "for illustrative purposes only" is unconvincing; that statement expressly applies only to the "Definitions" and "Examples of work" contents of the Specification, and not the "Requirements" contents.
This court must give great deference to the classifications as set forth. The Civil Service Commission has authority to decide classification in state or county service which is not assigned to an unclassified division, and when the commission has exercised such authority, the courts will interfere only where the conclusion reached is patently incompatible with the language and spirit of the Civil Service Act. Walsh, supra, 32 N.J.Super. at 44, 107 A.2d 722. Ordinarily, courts will not interfere with action of the Civil Service Department in classifying kinds of employment and in providing designations for those engaged in various classifications, in the absence of an affirmative showing of arbitrariness. Mullin v. Ringle, 27 N.J. 250, 256, 142 A.2d 216 (1958). Likewise, courts will not interfere with the discretionary exercise by the Civil Service Commission of its broad reclassification powers, in the absence of an affirmative showing that it was arbitrary, capricious, or unreasonable. Carls v. Civil Serv. Comm'n, 17 N.J. 215, 221, 111 A.2d 45 (1955).
The issue to be decided herein is whether the requirements in Department of Personnel civil service job specifications requiring PTC mandated training for County *281 Park Rangers, create enforceable rights under the Civil Service Act, contained at N.J.S.A. 11A:1-1 to 11A:12-6, and in the administrative regulations promulgated pursuant thereto. The question therefore is whether this court must grant deference to Job Specification 01414 and mandate that defendants provide training courses approved by the PTC to plaintiffs as County Park Rangers in the classified service.
Defendants believe that N.J.S.A. 11A:6-25 governs state training programs but lacks a corresponding statue applicable to political subdivisions, and thus that the Commissioner lacks power to mandate training for non-state employees. For additional support, defendants cite N.J.A.C. 4A:6-4.1, which states that, in local service, appointing authorities "may" implement Human Resource Development programs, while in State service, the Commissioner "shall" establish training programs. This court first notes that nothing within this regulation prohibits the Commissioner from implementing training programs for county employees within the civil service. In fact, N.J.A.C. 4A:9-1.1(a) suggests the opposite: "Upon the adoption of Title 11A, New Jersey Statutes, by a political subdivision, the Commissioner shall provide for the classification of all positions in the jurisdiction." The Commissioner must provide classifications to covered employees in political subdivisions, such as counties. Further,
"Positions in the career service shall, on the basis of job analysis, be assigned the title which (1) Describes the duties and responsibilities to be performed and the level of supervision exercised and received; (2) Establishes the minimum education and experience qualifications necessary for successful performance."

[N.J.A.C. 4A:3-3.1(a) and (b)].
In City of Camden v. Civil Serv. Comm'n, 129 N.J.L. 354, 29 A.2d 733 (1943), aff'd 130 N.J.L. 532, 33 A.2d 900 (E. & A.1943), the court stated, "The power of the municipality to prescribe [quoting the Civil Service Act] `the terms of office or employment of all officers and employees' is a qualified power, limited by the phrase `except as otherwise provided by law'. If the provisions of R.S. 11:1-1 et seq. provide otherwise as to the term of office of a given type of employee, then the municipal ordinance must give way to the general legislation." (citation omitted). Id. at 358, 29 A.2d 733. In the present case, the power ostensibly reserved by the County of Gloucester should give way to the contrary statement of the regulations promulgated pursuant to the Civil Service Act.
It is clear from the deposition testimony of Ms. Hamilton-Bond and Ms. Schwartz that these representatives, produced for deposition by the PTC and the Department of Personnel, respectively, both hold the position that the requirements for PTC training, sought by the plaintiffs herein, is clearly mandated by state law as embodied in Department of Personnel's Job Specification 01414. Ms. Hamilton-Bond explained the underlying policy of uniformity of training throughout the state, despite local deviations in specific job duties. As she testified, "[T]here are general duties that belong to all the County Park Rangers, that's why there was a course developed for county park rangers back in 1989, so there would be consistent training amongst all the County Park Rangers."
Engaging but misguided is defendants' argument that the judiciary should refrain from compelling them to perform their legal obligations because the applicable statutes and regulations do not specifically employ the term "compel" or a derivative thereof. Mandamus exists for the very purpose of compelling required action. It is a "coercive process that commands *282 the performance of a specific ministerial act or duty, or compels the exercise of a discretionary function, but does not seek to interfere with or control the mode and manner of its exercise or to influence or direct a particular result. Mandamus lies to compel but not control the exercise of discretion." Switz v. Middletown Tp., supra, 23 N.J. at 587-88, 130 A.2d 15 (citing Roberts v. Holsworth, 10 N.J.L. 57 (Sup.Ct.1828) and Benedict v. Howell, 39 N.J.L. 221 (Sup.Ct.1877)). Mandamus is a proper remedy "to compel specific action when the duty is ministerial and wholly free from doubt...." Loigman v. Twp. Comm. of Twp. of Middletown, 297 N.J.Super. 287, 299, 687 A.2d 1091 (App. Div.1997).
An argument similar to that offered by these defendants was recently advanced in another context, and was answered by the court in Loigman v. Kings Landing Condominium Ass'n, Inc., 324 N.J.Super. 97, 734 A.2d 367 (Ch.Div.1999), which stated:
Interestingly, the [Fair Debt Collection Practices Act] expressly creates only a cause of action for monetary relief, and is silent with regard to a court's ability to provide equitable relief as sought here. The FDCPA does not, however, prohibit the granting of equitable relief, including the discharging of a lien filed at a time when the creditor is prohibited by the FDCPA from taking further collection efforts. Where a "legal right has been infringed, a remedy will be given," is how Pomeroy expressed the equitable maxim more commonly phrased "equity will not suffer a wrong without a remedy." 2 Pomeroy, Equity Jurisprudence (1941) S 423. In the absence of legislative prohibition, the power of a court of equity to remedy a wrong exists. It then becomes the province of the court to determine whether, under the particular circumstances of the case, the remedy should be provided. Other than the absence of a provision in the FDCPA which would expressly support such a conclusionwhich only creates a vacuum, not a prohibitionthe court can fathom no reason why it may not, in good conscience and in the discretionary exercise of its equitable powers, remedy the actions taken by the Association in breach of 15 U.S.C. S 1692g(b) by ordering a discharge of the lien.

[Loigman, supra, 324 N.J.Super. at 108, 734 A.2d 367].
Similarly here, the regulations enacted pursuant to the Civil Service Act are absent any language prohibiting this court to compel the rights outlined within those regulations. Here, as there, a vacuum has been created, leaving this court to examine the relative merits of forcing compliance through the issuance of a writ of mandamus.
The equitable maxim referenced by the court in Loigman has been "explained to mean that where there is civil wrong, there ought to be a remedy; if the law provides none, equity may take jurisdiction in order to correct the injustice. Britton v. Royal Arcanum, 46 N.J.Eq. 102, 112, 18 A. 675 (Ch.1889), aff'd sub nom., Royal Arcanum v. Britton, 47 N.J.Eq. 325, 21 A. 754 (E. & A. 1890). An absence of precedent does not preclude an equity court from granting such relief as the circumstances require. Briscoe v. O'Connor, 115 N.J.Eq. 360, 364-65, 170 A. 884 (Ch. 1934); Brown v. Fidelity Union Trust Co., 10 N.J.Misc. 555, 558, 159 A. 809 (Ch. 1932)." Hon. William A. Dreier and Paul A. Rowe, Guidebook to Chancery Practice in New Jersey, New Jersey Institute for Continuing Legal Education (1997), at 2.
While this is a court of law and not a court of equity, I note that the Law Division is entitled to utilize equitable principles. As the court stated in Ward v. *283 Merrimack Mut. Fire Ins. Co., 312 N.J.Super. 162, 711 A.2d 394 (App.Div. 1998):
[I]f in the course of the proceedings it is determined by the trial judge that there are any ancillary issues in equity, the Law Division judge has the authority to exercise jurisdiction over those matters. In essence, this would give rise to a situation inverse of that presented in Lyn-Anna Properties [v. Harborview Dev. Corp., 145 N.J. 313, 321, 678 A.2d 683 (1996) ]. Nonetheless, the rule granting a Chancery Division judge ancillary jurisdiction over legal matters is equally applicable to a Law Division judge to adjudicate ancillary equity matters. See Asbestos Fibres, Inc. v. Martin Lab., 12 N.J. 233, 240, 96 A.2d 395 (1953); O'Neill v. Vreeland, 6 N.J. 158, 164, 77 A.2d 899 (1951); Speirs v. Spanko, 7 N.J.Super. 421, 426, 71 A.2d 395 (Law Div.1950). These cases, of course, simply recognize the 1947 Constitution which empowers both the Law and Chancery Divisions with co-equal, and often concurrent jurisdiction. "Subject to the rules of the Supreme Court, the Law Division and the Chancery Division shall each exercise the powers and functions of the other division when the ends of justice so require, and legal and equitable relief may be granted in any cause so that all matters in controversy between the parties may be completely determined. [N.J. Const. art. VI, S 3, P 4.]"

[Ward, supra, 312 N.J.Super. at 169-70, 711 A.2d 394].
Furthermore, it has long been acknowledged that equitable principles are properly for consideration and analysis before Law Division courts. See, for example: North Bergen Rex Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 730 A.2d 843 (1999) (prejudgment interest); Galligan v. Westfield Centre Serv., Inc., 82 N.J. 188, 412 A.2d 122 (1980) (tolling of statute of limitations); Dinizo v. Planning Bd. of Town of Westfield, 312 N.J.Super. 225, 711 A.2d 425 (Law Div.1998) (zoning); Lusby v. Hitchner, 273 N.J.Super. 578, 642 A.2d 1055 (App.Div.1994) (finding an affirmative duty of fair dealing from the spirit and philosophy of PIP statute); Mena ex rel. Mena v. Unsatisfied Claim and Judgment Fund, 317 N.J.Super. 351, 722 A.2d 128 (App.Div.1998) (compliance with notice provisions for recovering PIP benefits); Vito's Towing, Inc. v. Kemp, 279 N.J.Super. 414, 652 A.2d 1259 (App.Div.1995) (public sales of abandoned vehicles); Ideal Mut. Ins. Co. v. Royal Globe Ins. Co., 211 N.J.Super. 336, 511 A.2d 1205 (App.Div. 1986) (timeliness of insurer's right to relief); Hedgebeth v. Medford, 74 N.J. 360, 378 A.2d 226 (1977) (insurer's right of subrogation); and Brinkmann v. Urban Realty Co., 10 N.J. 113, 89 A.2d 394 (1952) (restitution to prevent unjust enrichment).
Defendants have argued that the Superior Court lacks jurisdiction to entertain this complaint in lieu of prerogative writs, and that a final agency determination following an adverse agency determination is a condition precedent to seeking relief through the courts. R. 4:69-5 states that, "[e]xcept where it is manifest that the interest of justice requires otherwise, actions under R. 4:69 shall not be maintainable as long as there is available a right of review before an administrative agency which has not been exhausted."
The view that such an administrative remedy exists is, in this case, inconsistent with the deposition testimony of Ms. Hamilton-Bond, who indicated that there is no formal agency review of mandated requirements, but that anyone who seeks relief from a training requirement should do so by writing a letter requesting relief from a requirement. Finally, she indicated that *284 final agency appeals are generally reserved for matters involving allegedly unfair dismissal of recruits from training. Ms. Schwartz likewise opined that, if a governmental entity did not like the requirements of a job classification, a request to lower the minimum requirements or to substitute experience could be requested.
Neither counsel has cited any case or statutory authority which would deprive this court of jurisdiction to decide the issue herein, by way of R. 4:69-1 et seq. However, the comments to that section of the rule state in pertinent part:
While ordinarily administrative remedies must be exhausted before resort is had to the court, exhaustion is neither a jurisdictional nor an absolute requirement and may be dispensed with where the interest of justice requires, or if there is a need for prompt decision in the public interest or where there is no question as to administrative discretion or judgment and only a question of law is involved or where further resort to administrative recourse would be futile.
[Pressler, Current N.J. Court Rules, comment 6 on R. 4:69 (2000) (citations omitted) ].
Also instructive on this topic is the case of Pullen v. So. Plainfield Planning Bd., 291 N.J.Super. 303, 677 A.2d 278 (Law Div.1995), aff'd 291 N.J.Super. 1, 676 A.2d 1095 (App.Div.1996), stating that, "since interpreting an ordinance involves a purely legal question, the courts are not required to extend any deference [via the right to seek such an interpretation from the board of adjustment], and are required to make their own decisions, de novo. Jantausch v. Borough of Verona, 41 N.J.Super. 89, 96, 124 A.2d 14 (Law Div.1956) aff'd, 24 N.J. 326, 131 A.2d 881 (1957); Grancagnola v. Planning Bd. of Verona, 221 N.J.Super. 71, 75, 533 A.2d 982 (App.Div.1987)." Pullen, supra, 291 N.J.Super. at 309-10, 677 A.2d 278.
Here, the issue for this court's determination is one of a purely legal nature, the resolution of which affords no discretion to the PTC and therefore is not reviewable administratively so as to implicate R. 4:69-5. Further, it appears from the testimony in this record that no review process exists for administrative resolution of this type of dispute.
Defendants believe, based upon a disagreement with the language of the Specification, that the training program at issue is not "mandated" by the PTC, since defendants argue that plaintiffs are not "police officers" required to attend the training specified in N.J.S.A. 52:17B-68. Defendants argue that such language assumes a faulty premise, namely that, by the nature of the employment duties which County Park Rangers perform, they meet the definition of a "police officer." Further, defendants believe that the Specification requirement is arbitrary because it appears that the opinion of the Department of Personnel that training is required, is, in part, based on a faulty interpretation of N.J.S.A. 40:12-6. A letter, dated August 5, 1998, from Assistant Commissioner Arthur E. Brown, Jr., to Richard A. Dann, President, CWA Local 1085, Woodbury, New Jersey, concerning the matter before this court, states that the Department of Personnel and the PTC "consider County Park Ranger to be a law enforcement title and, as such, employees in this title are required to receive appropriate training as mandated by the Police Training Commission," and makes reference to the 1981 letter from Office of the Attorney General, of the New Jersey Department of Law and Public Safety. The 1981 opinion letter stated the position that N.J.S.A. 40:12-6, read in conjunction with the Police Training Act, *285 dictated that "the Monmouth County Park Rangers should be notified that said agency comes within the jurisdiction of the Police Training Act, and appropriate steps should be taken to insure those employees granted police powers as defined in N.J.S.A. 40:12-6 satisfactorily complete the requirements of the Police Training Act."
N.J.S.A. 40:12-1 states, in pertinent part:
The mayor or other chief executive officer of any municipality and the board of chosen freeholders of any county may in his or its discretion appoint not less than three nor more than seven persons, citizens and residents of such municipality or county, as the case may be, as members of a board of recreation commissioners.
N.J.S.A. 40:12-6 states, in pertinent part:
The board of recreation shall have full control over all lands, playgrounds and recreation places ... [t]he custodians, supervisors and assistants appointed by the board shall, while on duty and for the purpose of preserving order and the observance of the rules, regulations and by-laws of the board, have all the power and authority of the respective municipalities in and for which they are severally appointed.
As defendants correctly point out, these statutes do not apply in this case, because Gloucester County has not availed itself of its statutory option to create a board of recreation commissioners, and yet it is argued these statutes are being relied upon in this case by the Department of Personnel, as evidenced by its letter from Mr. Brown to Mr. Dann. However, in this letter, the previous opinion of the Attorney General is relied upon only for additional support. Rather, the following paragraph of the letter from the Department of Personnel encompasses the gist of the Department's basis:
The duties and responsibilities included in the County Park Ranger job specification have been compared to other law enforcement titles by this Department and the company that administers the Law Enforcement Candidate Record (LECR) testing program. These analyses placed particular emphasis on the behavioral requirements of the jobs involved and determined that the requirements of this title are sufficiently similar to the requirements of titles already in the law enforcement testing program... The County Park Ranger title is now included in the LECR testing program because it encompasses sufficient law enforcement duties to warrant its inclusion.
The Police Training Act defines a "police officer," in relevant part, as "any employee of a law enforcement unit ... other than... persons whose duties do not include any police function." N.J.S.A. 52:17B-67. It defines "law enforcement unit" as "any police force or organization in a municipality or county which has by statute or ordinance the responsibility of detecting crime and enforcing the general laws of this State." Id. Among the "examples of work" for a County Park Ranger in Job Specification 01414, is, "Enforces park regulations and, when necessary, apprehends and takes into custody violators of the law."
However, the court's decision today is expressly not based upon a semantic analysis of whether or not the plaintiffs are, technically, "police officers." The compliance sought in this action is with the Civil Service Act and its regulations, not with the Police Training Act. The Monmouth County cases, supra, cited by defendants, are inapposite. There, the New Jersey Public Employment Relations Commission *286 (PERC) was faced with the issue of whether Monmouth County's Park Rangers were "policemen" under N.J.S.A. 34:13A-5.3. The issue held importance as its resolution determined whether or not the park rangers could continue with their collective bargaining negotiations unit, which at that time included employees besides police. Upon appeal of the PERC's decision that the park rangers were not police under Title 34, the Appellate Court was satisfied that "PERC's determination that park rangers are not policemen within the purview of N.J.S.A. 34:13A-5.3 is not arbitrary, capricious or unreasonable, does not lack full support in the evidence and does not violate legislative policy expressed or implied in the statutory scheme administered by PERC." NJPER Supp2d 170, Docket No. A-5998-86T8 (1988). The issue before me is entirely different from the subject matter of the Monmouth County litigation, and even if the issues were similar, this court would not be bound precedentially in this matter by a determination that the prior PERC decision was not arbitrary, capricious or unreasonable.
Given the above analysis, and bearing in mind this court's obligation to accord substantial deference to the specifications promulgated by the Department of Personnel pursuant to the Civil Service Act, this court finds the provision requiring training of new County Park Rangers within 18 months to be within the powers granted the Department of Personnel by the Civil Service Act and the regulations promulgated pursuant thereto. The promulgation of such specifications is not patently incompatible with the language and spirit of the Civil Service Act. See Walsh, supra, 32 N.J.Super. at 44, 107 A.2d 722. While it is clear that the duties of some park rangers vary according to the county they serve, it is significant that the New Jersey Department of Personnel performed a "desk audit" and determined that both individuals were appropriately classified as County Park Rangers. Further, as plaintiffs have argued, Job Specification 01414 and its accompanying "Requirements" were matters of public record, and defendants could have taken steps to challenge or completely avoid the provision contained within, prior to hiring park rangers under the civil service.
Additionally, defendants' contention that N.J.S.A. 40:32-2.6 permits them to hire "park police," does nothing to alter this court's conclusion as to the applicable requirements of the job Specification for the civil service position which plaintiffs do hold, as being a duty and responsibility of a position assigned a job title, as prescribed by N.J.A.C. 4A:3-3.2.
This court therefore holds that the requirements of Department of Personnel civil service job specifications create enforceable rights under the Civil Service Act, codified at N.J.S.A. 11A:1-1 to 11A:12-6, and under the administrative regulations promulgated pursuant thereto. Therefore, deference must be granted to Job Specification 01414, and the job training requirements mandated therein.
The right of plaintiffs to official action, the issuance of a writ of mandamus, is certain and specific, namely the PTC mandated police training designated by the Specification. There is a clear right to the performance of a mandatory duty, which is free of any element of discretion on the part of defendants.
The motion brought by plaintiffs, for summary judgment and for the issuance of a writ of mandamus requiring defendants to provide the police training required by Department of Personnel Job Specification 01414, is granted. Therefore, the defendants' *287 motion for summary judgment is denied.